**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 17 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

DOROTHY S. KARNES,

      Plaintiff - Appellee,

v.

SCI COLORADO FUNERAL
SERVICES, INC., d/b/a T.G. McCarthy
Funeral Home,

      Defendant - Appellant.

No. 96-1478

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No.  93-Z-1150)**

---

Daniel R. Satriana Jr., Alan Epstein with him on the briefs, of Hall & Evans, L.L.C. , Denver, Colorado for Defendant - Appellant

Charlotte Noelle Sweeney,  Richard C. LaFond with her on the brief, of LaFond & Clausen, Denver, Colorado for Plaintiff - Appellee and Cross-Appellant.

---

Before  **ANDERSON, KELLY,** and **HENRY**, Circuit Judges.

---

**HENRY**, Circuit Judge.

---

SCI Colorado Funeral Services, Inc. (SCI) appeals the district court's judgment awarding compensatory and punitive damages to Dorothy Karnes and ordering reinstatement on her retaliatory discharge claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e17.[1]  SCI argues that the district court should have applied state rather than federal law regarding the standard for proving punitive damages. It maintains that the district court erred in refusing to apply the Colorado statute, Colo. Rev. Stat. § 13-25-127, which requires plaintiffs to prove claims for punitive damages "beyond a reasonable doubt."   We conclude that the burden of proof for recovering punitive damages in Title VII actions is governed by federal rather than state law. Therefore, we affirm the judgment of the district court.

## I.  BACKGROUND

Ms. Karnes filed this wrongful discharge suit against SCI asserting claims under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-34, Title VII, and state law.  The district court granted summary judgment to SCI on several of Ms. Karnes's claims, but the ADEA and Title VII claims proceeded to trial.  Although it returned a verdict in favor of SCI on Ms. Karnes's ADEA claim, the jury found for Ms.

---

[1]      Mr. Karnes has filed a cross-appeal, no. 96-1480, challenging the district court's reduction in its award of attorneys' fees.  She has also filed a separate appeal, no. 97-1212, challenging the district court's denial of her request for post-judgment attorneys' fees.  Those appeals are addressed in separate orders and judgments.

Karnes on her Title VII claim, awarding $52,000 in lost wages and benefits, $20,000 in emotional damages, and $110,000 in punitive damages. Following the jury's verdict, the district court ordered SCI to reinstate Ms. Karnes to her former position.

The district court instructed the jury that, in order to prevail on her claims, Ms. Karnes was required to prove each of the elements by a preponderance of the evidence. See SCI's App. at 42, 44. SCI requested a separate instruction stating that, in order to be entitled to punitive damages, Ms. Karnes would have to establish beyond a reasonable doubt that [SCI] "engaged in a discriminatory practice or practices with malice or reckless indifference to the rights of [Ms.] Karnes to be free from such intentional discrimination in employment." Id. at 53. In support of this proposed instruction, SCI invoked Colo. Rev. Stat. § 13-25-127, which provides that "[e]xemplary damages against the party against whom the claim is asserted shall only be awarded in a civil action when the party asserting the claim proves beyond a reasonable doubt the commission of a wrong under the circumstances set forth in section 13-21-102." (emphasis supplied).[2] The district court refused to give SCI's proposed punitive damages instruction. In instructing the jury on punitive damages, the court did not specify a burden of proof, and SCI objected to that part of the instruction.

---

[2]     Section 13-21-102 authorizes the award of punitive damages in instances of "fraud, malice, or willful and wanton conduct." See Colo. Rev. Stat. § 13-21-102.

## II.  DISCUSSION

On appeal, SCI argues that the district court erred in refusing to instruct the jury that Ms. Karnes was required to prove her entitlement to punitive damages beyond a reasonable doubt, the standard set forth in § 13-25-127.   Because SCI's objection to the district court's jury instructions raises a legal question, we review de novo the district court's refusal to apply Colorado's beyond a reasonable doubt standard.[3]   See City of Wichita v. United States Gypsum Co., 72 F.3d 1491, 1494-95 (10th Cir.1996).  Although we may reverse the district court's judgment only if an erroneous instruction is prejudicial in light of the record as a whole, Mason v. Texaco, Inc., 862 F.2d 242, 246 (10th Cir.1988), we note that "[j]ury instructions outlining the appropriate burdens of proof are

---

[3]     We are not persuaded by Ms. Karnes's argument that the district court's jury instructions should be reviewed only for plain error because SCI did not properly preserve its objection. Although SCI agreed to an instruction stating that damages should be awarded in the event that the jury found for the plaintiff by a preponderance of the evidence, see Aple's Supp. App. at 2, SCI also tendered a proposed jury instruction stating that punitive damages must be established beyond a reasonable doubt, see SCI's App. at 53.  Moreover, SCI objected to the district court's refusal to apply that standard. See id. at 71.

SCI's specific objection to the district court's punitive damages instruction was sufficient to preserve the burden of proof issue for appellate review.   See Fed R. Civ. P. 51 ("No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection."); Comcoa, Inc. v. NEC Tels., Inc., 931 F.2d 655, 660 (10th Cir. 1991) ("A party's objection to a jury instruction must be sufficiently clear such 'that the grounds stated in the objection [are] obvious, plain, or unmistakable.'"(quoting Aspen Highlands Skiing Corp. v. Aspen Skiing Co., 738 F.2d 1509, 1514 (10th Cir. 1984), aff'd, 472 U.S. 585 (1985)).

almost always crucial to the outcome of the trial," Stevison by Collins v. Enid Health

Sys., Inc., 920 F.2d 710, 714 (10th Cir. 1990).


## A. 42 U.S.C. § 1988

In arguing that the district court erred in refusing to apply the beyond a reasonable

doubt standard established by the Colorado statue, SCI invokes 42 U.S.C. § 1988(a),

which dictates when federal courts adjudicating federal civil rights laws should apply

state law:

> The jurisdiction in civil and criminal matters conferred on the
> district courts by the provisions of titles 13, 24, and 70 of the
> Revised Statutes for the protection of all persons in the United
> States in their civil rights, and for their vindication, shall be
> exercised and enforced in conformity with the laws of the
> United States, so far as such laws are suitable to carry the
> same into effect; but in all cases where they are not adapted to
> the object, or are deficient in the provisions necessary to
> furnish suitable remedies and punish offenses against the law,
> the common law, as modified and changed by the constitution
> and statutes of the State wherein the court having jurisdiction
> of such civil or criminal cause is held, so far as the same is
> not inconsistent with the Constitution and laws of the United
> States, shall be extended to and govern the said courts in the
> trial and disposition of the cause, and, if it is of a criminal
> nature, in the infliction of punishment on the party found
> guilty.

Id. (emphasis added).

Section 1988 directs courts to follow a three-step process in determining whether

to apply state law. Burnett v. Grattan, 468 U.S. 42, 47 (1984); Blake v. Dickason, 997

F.2d 749, 750 (10th Cir. 1993).  First, the court must determine whether federal law establishes a suitable rule to apply.  See Burnett, 468 U.S. at 47-48.  If no suitable federal rule exists, the court must then determine whether the state law supplies one.  See id. at 48.  Finally, the court must consider whether the state rule, if it exists, is consistent with federal law.  Id.  On several occasions, the Supreme Court has concluded that state laws should be applied under § 1988, see, e.g., id. at 48-49 (concluding that the forum state's personal injury statute of limitations should be applied to § 1983 claims); Robertson v. Wegmann, 436 U.S. 584 (1978) (applying a state's survivorship statute to a § 1983 action).  SCI urges us to follow those decisions here.

In analyzing SCI's argument, we begin by considering whether federal law regarding the burden of proof for punitive damages claims under Title VII is "deficient." See 42 U.S.C. § 1988(a).  Then we consider whether the Colorado's statute is consistent with federal law.

### B.  The Alleged Deficiency in Federal Law

We are not convinced that federal law regarding the burden of proving punitive damages in Title VII actions is "deficient" under § 1988(a).  The applicable federal statute, 42 U.S.C. § 1981a(b)(1), provides that plaintiffs in Title VII actions may recover punitive damages against a private defendant if that defendant "engaged in a discriminatory practice or discriminatory practices with malice or with reckless

-6-

indifference to the federally protected rights of an aggrieved individual." This punitive damages provision is part of the Civil Rights Act of 1991 (CRA), 42 U.S.C. § 1981a, legislation enacted "to further Title VII's 'central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination.'" Landgraf v. USI Film Prods., 511 U.S. 244, 254 (1994) (quoting Albemarle Paper Co. v. Moody, 422 U.S. 405, 421 (1975)). As the Supreme Court has explained, the CRA "effects a major expansion in the relief available to victims of employment discrimination." Id. It allows plaintiffs in Title VII actions to obtain the same kinds of monetary relief (particularly punitive damages and certain kinds of compensatory damages) that have been available to plaintiffs bringing actions under other civil rights laws, such as 42 U.S.C. §§ 1981 and 1983. See Luciano v. Olsten Corp., 110 F.3d 210, 219-221 (10th Cir. 1997) (discussing the legislative history of the Act). The CRA also authorizes jury trials if a Title VII plaintiff seeks compensatory or punitive damages. See 42 U.S.C. § 1981a(c); Landgraf, 511 U.S. at 254.

Section 1981a(b) does not specify the burden of proof that a plaintiff must meet in order to recover punitive damages. However, in our view, the absence of a particular burden of proof in the statute does not establish that the federal law on the question is "deficient" under § 1988. See Brown v. United States, 742 F.2d 1498, 1507 n.5 (D.C. Cir. 1984) (en banc) (criticizing the view that "the simple absence of any provision of state law from federal law automatically implies a deficiency from federal law, regardless

-7-

of whether or not such a provision is in any way necessary or helpful to or even consistent with the execution of the federal law in question."). Here, there are several sources of federal law suggesting that the determination of punitive damages should be governed by the preponderance of the evidence standard.

In particular, in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), a plurality of the Supreme Court concluded that an employer that has allowed a discriminatory motive to play a part in an employment decision has an affirmative defense to a Title VII claim if it establishes by a preponderance of the evidence that it would have made the same decision in the absence of discrimination. In rejecting the more stringent clear and convincing evidence standard, the plurality noted that "[c]onventional rules of civil litigation generally apply in Title VII cases, and one of these rules is that parties to civil litigation need only prove their case by a preponderance of the evidence." Price Waterhouse, 490 U.S. at 253 (internal quotation and citation omitted). The Court added that exceptions to this general rule are uncommon and "are ordinarily recognized only when the government seeks to take unusual coercive action--something more dramatic than entering an award of money damages or other conventional relief--against an individual." Id. Although Price Waterhouse does not directly address the burden of proof for establishing a punitive damages claim, its reasoning suggests that such a claim, which seeks nothing "more dramatic than . . . money damages," id., does not warrant an exception to the traditional preponderance of the evidence rule.

Additionally, a number of federal district courts have concluded that the preponderance of the evidence standard applies to punitive damages claims in civil rights actions. See Florez v. Delbovo, 939 F. Supp. 1341, 1344-45 (N.D. Ill. 1996) (applying the preponderance standard to actions brought under 42 U.S.C. §§ 1981 and 1982); Stender v. Lucky Stores, Inc., 803 F. Supp. 259, 324 (N.D. Cal. 1992) ("There appears to be no distinction between the standard for establishing a right to punitive damages [in Title VII cases] and the standard for establishing liability for disparate treatment. Congress could have made such a distinction, but chose not to. The burden of proof, preponderance of the evidence, is the same for both claims."); Bird v. Figel, 725 F. Supp. 406, 412 (N.D. Ind. 1989) (rejecting argument that Indiana's clear and convincing standard should be applied to a § 1983 claim for punitive damages); Hopkins v. City of Wilmington, 615 F. Supp. 1455, 1465 (D. Del. 1985) (concluding that, in a § 1983 claim, "[p]unitive damages are recoverable only upon proof by a preponderance of the evidence that the defendant acted with ill will or reckless indifference to another's federally protected rights"); Taylor v. Canton, Ohio Police Dept., 544 F. Supp. 783, 794 (N.D. Ohio 1982) (applying preponderance of the evidence standard to punitive damages claim in a § 1983 action); Cerjan v. Fasula, 539 F. Supp. 1226, 1235 (N. D. Ohio 1981) (same).

Although these decisions do not discuss in much detail the reasons for applying the preponderance standard to Title VII punitive damages claims, we agree with their approach. They comport with the Supreme Court's decision in Price Waterhouse, which

suggests that the preponderance of the evidence standard is a "[c]onventional rule[] of civil litigation," Price Waterhouse, 490 U.S. at 253, that generally applies in Title VII cases, particularly when the relief requested is an award of money damages. Moreover, SCI has not identified, nor have we found, any federal case applying the more stringent clear and convincing or beyond a reasonable doubt standards to punitive damages claims under Title VII. We therefore conclude that federal law is not "deficient" under 42 U.S.C. § 1988 with regard to the burden of proof for punitive damages claims under Title VII. Under federal law, the preponderance of the evidence standard constitutes a conventional rule of civil litigation that the district court properly applied to Mr. Karnes's punitive damages claim.[4]

.

## C. Conflict Between State and Federal Law

Even if federal law were deficient as to the burden of proof for punitive damages claims in Title VII actions, application of a more stringent standard would only be warranted if SCI could satisfy the other two elements of the three-part inquiry outlined

---

[4]     In its recent decision in Community Hospital v. Fail, no. 97-SC-558 (Colo. Nov. 30, 1998), the Colorado Supreme Court has reached the same conclusion. Relying on Price Waterhouse and lower federal court cases, the Colorado Supreme Court held that, under 42 U.S.C. § 1981a, the burden of proving punitive damages is a preponderance of the evidence. The court overruled its previous decision in Boulder Valley School District R-2 v.. Price, 805 P.2d 1085 (Colo. 1991), in which it had held that the beyond a reasonable doubt standard set forth in Colo. Rev. Stat. § 13-25-127 applied to punitive damages claims under 42 U.S.C. § 1983.

Burnett v. Graham, 468 U.S. at 47–that state law supplies an applicable rule and that the state law rule is consistent with federal law. Here, SCI has satisfied the second Burnett element--identifying a state law rule–the beyond a reasonable doubt standard set forth in Col. Rev. Stat. § 13-25-127. However, we conclude that SCI cannot establish the third element of the Burnett inquiry. The Colorado statute is not consistent with the federal law established in Title VII.

In determining whether state and federal laws are consistent, courts must examine not only particular constitutional and statutory provisions but also "'the policies expressed in [them].'" Robertson, 436 U.S. at 590 ( quoting Sullivan v Little Hunting Park, Inc. 396 U.S. 229, 240 (1969)). "Of particular importance is whether application of state law 'would be inconsistent with the federal policy underlying the cause of action under consideration.'" Id. (quoting Johnson v. Railway Express Agency, 421 U.S. 454, 465 (1975)).

As noted above, the federal legislation at issue here–Title VII--–constitutes "a broad remedial measure 'designed to assure equality of employment opportunities.'" Pullman Standard v. Swint, 456 U.S. 273, 276 (1982) (quoting McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800 (1973)). In amending Title VII and expanding the relief available to victims of discrimination, the CRA advances that broad remedial purpose. See Landgraf, 511 U.S. at 253. By allowing the recovery of punitive damages, § 1981a(b) (the section of the CRA at issue here) provides that in appropriate

circumstances, damage awards in Title VII actions may serve to punish outrageous discriminatory conduct and to deter similar conduct in the future.  See Smith v. Wade, 461 U.S. 30, 54 (1983) (discussing the purposes of punitive damage awards).

Application of  Colo. Rev. Stat. § 13-25-127 would be inconsistent with the general assumption that "'in the absence of a plain indication to the contrary, . . . Congress when it enacts a statute is not making the application of the federal act dependent on state law.'" Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 43 (1989) (quoting  Jerome v. United States, 318 U.S. 101, 104 (1943)); cf. NLRB v. Hearst, 322 U.S. 111 (1943) (rejecting the argument that the term "employee," as used in National Labor Relations Act, should be defined by state law).  More importantly, § 13-25-127 is inconsistent with the broad remedial policies underlying the CRA.  The Colorado statute's imposition of the stringent beyond a reasonable doubt burden of proof on punitive damages claims cannot be harmonized with the policy underlying the CRA--"significantly expand[ing] the monetary relief potentially available to [Title VII] plaintiffs." Landgraf, 511 U.S. at 253.  Additionally, the Colorado statute creates a distinction between the burden of proof for establishing compensatory damages and the burden of proof for establishing punitive damages, a distinction that does not exist under § 1981a(b).

In arguing for the application of the Colorado statute, SCI invokes the Supreme Court's decision in Robertson.  The Court there held that a Louisiana survivorship statute

should be applied to bar a § 1983 action brought by the executor of the plaintiffs' estate because the executor did not satisfy the statute's requirements in that he was not a spouse, child, parent, or sibling of the deceased plaintiff. SCI argues that if the application of a Louisiana law to completely bar a § 1983 action does not conflict with the remedial purposes of the civil rights laws, then neither does the Colorado statute's imposition of a higher burden of proof on claims for a particular kind of damages.

We disagree with SCI's reading of <u>Robertson</u>. The Court there stressed that its holding was "a narrow one, limited to situations in which no claim is made that state law generally is inhospitable to survival of § 1983 actions and in which the particular application of state survivorship law, while it may cause abatement of the action, has no independent adverse effect on the policies underlying § 1983." <u>Robertson</u>, 436 U.S. at 594. The Court stated that it might reach a different conclusion if a state law did not provide for the survival of any tort actions or if it "significantly restricted the types of actions that survive." <u>Id.</u>

The Colorado statute at issue is clearly distinguishable from the Louisiana survivorship statute at issue in <u>Robertson</u>. Unlike the Louisiana statute, the Colorado statute is "generally inhospitable" to punitive damages claims. If the statute were applied here, punitive damages in Title VII cases would be significantly more difficult to obtain in Colorado than in states that have not imposed the beyond a reasonable doubt standard. The remedial and deterrent effects of punitive damage awards might well be diminished,

thereby undermining important Congressional policies underlying the CRA and Title VII.
Although there are appealing arguments for limiting the recovery of punitive damages,
see generally Pacific Mutual Life Ins. Co v. Haslip, 499 U.S. 1, 23 n.11 (1991), the
decision as to whether or how to limit them in cases filed under Title VII and the other
federal civil rights statutes must be made by federal lawmakers rather than the states.  See
Jackson v. Pool Mortgage Co., 868 F.2d 1178, 1181 (10th Cir. 1989) (concluding that
"[f]ederal standards govern the determination of punitive damages under the federal civil
rights statutes") (emphasis in original); Garrick v. City and County of Denver, 652 F.2d
969, 971 (10th Cir. 1981) (concluding that "[the defendant's] assertion that the amount of
punitive damages . . . should be reviewed under Colorado standards is without merit").


## III.  CONCLUSION

We therefore conclude that, under 42 U.S.C. § 1988a, federal law is not deficient
as to the burden of proof for punitive damages claims in Title VII actions. The
preponderance of the evidence standard constitutes a conventional rule of civil litigation
that governs such claims.  We further conclude that the beyond a reasonable doubt
standard set forth in Colo. Rev. Stat. § 13-25-127 is inconsistent with the remedial
policies underlying Title VII and the Civil Rights Act of 1991.  Accordingly, the district
court properly applied the preponderance of the evidence standard to Ms. Karnes's
punitive damages claim .

-14-

The judgment of the district court is therefore AFFIRMED.