**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 11, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

GARY LEDERMAN,

Plaintiff-Appellee,

v.

FRONTIER FIRE PROTECTION,
INC., a Colorado corporation, and
ESTATE OF KARL SMITH,

Defendants-Appellants.

No. 10-1534

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. NO. 07-CV-01708-RPM)**

---

Michael P. Zwiebel (Jeffrey A. Springer with him on the briefs) Springer and
Steinberg, P.C., Denver, Colorado, for Appellant.

David Lichtenstein, Attorney at Law, Denver, Colorado, for Appellee.

---

Before **BRISCOE**, Chief Circuit Judge, **TYMKOVICH**, Circuit Judge, and
**EAGAN**[*], District Judge.

---

**TYMKOVICH**, Circuit Judge.

---

[*] The Honorable Claire V. Eagan, District Judge, United States District
Court, Northern District of Oklahoma, sitting by designation.

Gary Lederman sued his former employer, Frontier Fire Protection, Inc., to recover overtime pay he alleged was owed to him under the Fair Labor Standards Act (FLSA). A jury found Frontier liable and awarded Lederman $17,440.86 in damages. Frontier challenges the jury instructions issued by the district court.

Because we find the district court should not have instructed the jury that Frontier bore a heightened burden of proof in establishing its entitlement to an FLSA exemption, we REVERSE the judgment and REMAND the case for further proceedings.

## I. Background

Frontier is a company in the business of selling and installing automatic fire sprinkler systems. Frontier hired Lederman as a senior estimator in 2002. Although the facts are contested, Lederman's job responsibilities appear to have involved contacting customers and potential customers, inspecting customer buildings to evaluate the cost of sprinkler system installation, and preparing bids. Lederman spent between 30 and 60 percent of his time in Frontier's office,[1] and did most of his bid preparation work there. The bids he prepared were sent as offers to customers, but the extent of his power to enter into binding contracts on behalf of Frontier is disputed.

---

[1] Lederman testified he spent 60 percent of his time in the office, while Frontier's CEO, Karl Smith, claimed Lederman was in the office as little as 30 percent of the time. Lederman's supervisor, Steve Martin, estimated Lederman was in the office about half the time.

Frontier paid Lederman a salary and an annual bonus. Lederman testified at trial that his annual bonuses totaled $30,000 in 2005 and $40,000 in 2006. Frontier did not pay Lederman overtime, and did not pay him any commission for the sales he arranged.

Lederman resigned in May 2007 and demanded that Frontier pay him $5,000 as a portion of his annual bonus for that year. Frontier refused. Lederman retained an attorney and filed suit.

Lederman asserted a claim against Frontier for overtime pay under the FLSA.[2] According to Lederman, he began tracking the amount of overtime he worked on his home computer in 2002, and stopped tracking it in early 2006. He alleged that he frequently worked in excess of 40 hours per week, but was never paid overtime except on "approximately one or two occasions." App. 11.

Frontier asserted the affirmative defense that Lederman qualified as an exempt employee under the FLSA, and therefore was not eligible for overtime pay. Specifically, Frontier alleged that Lederman was an exempt outside salesperson as defined by the FLSA. *Id.*

At trial, the evidence regarding whether Lederman qualified as an outside salesperson was mixed. In particular, the parties offered conflicting evidence regarding what proportion of Lederman's working time was spent in the office or

---

[2] Lederman also asserted two other claims, which he abandoned before trial.

traveling, the importance of sales to Lederman's position, and his authority to finalize sales.

After the close of evidence, the court conducted a conference to discuss jury instructions. Frontier proposed the following jury instruction regarding whether Lederman was an exempt employee: "An employer seeking an exemption from the overtime requirements of the FLSA bears the burden of proving an exemption." *Id.* at 147. Lederman proposed a different instruction: "An employer seeking an exemption from the overtime requirements of the FLSA bears the burden of proving that the particular employee fits plainly and unmistakably within the terms of the claimed exemption." *Id.* at 72. Lederman also proposed a special verdict form that started with the question, "Have Defendants carried their burden of proving that Gary Lederman fit plainly and unmistakably within the terms of the outside sales exemption?" *Id.* at 94.

Over Frontier's objection, the court adopted Lederman's instruction regarding the outside sales exemption issue.

In its oral instructions to the jury, the court said:

> The party asserting a claim or an affirmative defense has the burden of proving the essential elements of the claim or affirmative defense by a preponderance of the evidence. To 'prove by a preponderance of the evidence' means to prove that something is more likely so than not so. In other words, a preponderance of the evidence means such evidence as, when considered and compared with that opposed to it, has more convincing force and produces in your minds a belief that what is sought to be proven is more likely true than not true. The rule does not require proof to an absolute

-4-

certainty, since proof to an absolute certainty is seldom possible in any case.

> *An employer seeking an exemption from the overtime requirements of the FLSA bears the burden of proving that the particular employee fits plainly and unmistakably within the terms of the claimed exemption.*

> Persons employed in the capacity of "outside salesmen" are exempt from the minimum wage and overtime pay requirements of the Fair Labor Standards Act.

> To prove this exemption, the defendants must prove by a preponderance of the evidence that (1) the plaintiff's primary duty was (a) making sales; or (b) obtaining orders or contracts for services; and (2) the plaintiff was customarily and regularly engaged away from the employer's place or places of business in performing such primary duty.

*Id.* at 659-60 (emphasis added).

The jury ultimately found that Lederman was not an outside salesperson. It went on to find Frontier liable to Lederman, but only for a portion of the amount sought.

# II. Discussion

## A. *Standard of Review*

"We review a district court's decision to give a particular jury instruction for abuse of discretion," but "we review de novo legal objections to the jury instructions." *Frederick v. Swift Transp. Co.*, 616 F.3d 1074, 1079 (10th Cir. 2010) (internal quotation marks and citations omitted); *see also Webb v. ABF Freight Sys., Inc.*, 155 F.3d 1230, 1248 (10th Cir. 1998) ("[W]e will find an abuse

of discretion if the challenged instruction incorrectly states the governing law."). We read and evaluate the jury instructions in light of the entire record to determine if they "fairly, adequately and correctly state the governing law and provide the jury with an ample understanding of the applicable principles of law and factual issues confronting them." *United States v. Barrera-Gonzales*, 952 F.2d 1269, 1272 (10th Cir. 1992) (internal quotation marks and citation omitted). We do not decide whether the instructions "are flawless, but whether the jury was misled in any way and whether it had a[n] understanding of the issues and its duty to decide those issues." *Brodie v. Gen. Chem. Corp.*, 112 F.3d 440, 442 (10th Cir. 1997) (internal quotation marks and citation omitted). "[S]o long as the charge as a whole adequately states the law, the refusal to give a particular requested instruction" is not grounds for reversal. *United States v. Suntar Roofing, Inc.*, 897 F.2d 469, 473 (10th Cir. 1990).

If we determine that the trial court erred, we must then determine whether the error was prejudicial to Frontier. "[T]he judgment must be reversed 'if the jury might have based its verdict on the erroneously given instruction.'" *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 867 (10th Cir. 2003) (quoting *Townsend v. Lumbermens Mut. Cas. Co.*, 294 F.3d 1232, 1242 (10th Cir. 2002)). "Although we may reverse the district court's judgment only if an erroneous instruction is prejudicial in light of the record as a whole, we note that '[j]ury instructions outlining the appropriate burdens of proof are almost always crucial to the

outcome of the trial.'" *Karnes v. SCI Colo. Funeral Servs., Inc*., 162 F.3d 1077, 1079 (10th Cir. 1998) (quoting *Stevison v. Enid Health Sys., Inc.*, 920 F.2d 710, 714 (10th Cir. 1990)).

### B. FLSA's Outside Salesman Exemption

Lederman argued at trial that he was an employee entitled to overtime pay. The FLSA requires employers to pay covered employees overtime equal to one-and-one-half times their normal pay for work in excess of forty hours in a week. *See* 29 U.S.C. § 207. Employers who fail to do so are liable to the employee for the unpaid overtime, plus "an additional equal amount as liquidated damages." § 216(b).

But the FLSA exempts employers from this requirement for certain kinds of employees, including "any employee employed . . . in the capacity of an outside salesman." § 213. The definition of an outside salesman is established by federal labor regulations:

> (a) The term "employee employed in the capacity of outside salesman" in section 13(a)(1) of the [FLSA] shall mean any employee:
>
> (1) Whose primary duty is:
>
> (i) making sales within the meaning of section 3(k) of the [FLSA], or
>
> (ii) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and

(2) Who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty.

(b) The term "primary duty" is defined at § 541.700. In determining the primary duty of an outside sales employee, work performed incidental to and in conjunction with the employee's own outside sales or solicitations, including incidental deliveries and collections, shall be regarded as exempt outside sales work. Other work that furthers the employee's sales efforts also shall be regarded as exempt work including, for example, writing sales reports, updating or revising the employee's sales or display catalogue, planning itineraries and attending sales conferences.

29 C.F.R. § 541.500; *see Clements v. Serco, Inc.*, 530 F.3d 1224, 1227-28 (10th Cir. 2008) ("The touchstone for making a sale, under the Federal Regulations, is obtaining a commitment.  This can be done by making a sale or obtaining an order or contract for services."); *see also Christopher v. Smithkline Beecham Corp.*, No. 11-204, slip op. at 20-21 (U.S. June 18, 2012) (finding that "[o]btaining a nonbinding commitment" may qualify as a sale if it "is the most that plaintiffs were [legally] able to do to ensure the eventual disposition of the products that respondent sells.").

Thus, determining whether an employee is an outside salesman for the purposes of the FLSA can be a fact-intensive endeavor, turning on, for example, the extent of the employee's authority to enter contracts, the amount of time spent away from the employer's place of business, or whether the employee's other duties were incidental to the employee's sales.  *See, e.g.*, *Clements*, 530 F.3d at 1228 (military recruiter not exempt because he lacked authority to obtain a

binding commitment from recruits); *Ackerman v. Coca-Cola Enters.*, 179 F.3d 1260, 1266-67 (10th Cir. 1999) (employee's promotional work exempt where employee consummated sales at same location).  Such determinations may also be affected by the "regulatory environment within which [the employer] must operate."  *Christopher*, No. 11-204, slip op. at 21.

The question of Lederman's status was one of the central fact questions at trial.  It was Frontier's burden to establish its entitlement to an exemption from FLSA's overtime requirements.

### C.  Burden of Proof

Frontier claims the trial court erred by instructing the jury that Frontier had to prove Lederman "fit[] plainly and unmistakably within the terms of the claimed exemption."  Frontier argues the phrase "plainly and unmistakably" refers to the principle, articulated in many prior cases, that exemptions from FLSA's overtime provisions should be construed narrowly.  According to Frontier, this principle is a rule of statutory interpretation for the court, rather than a burden of proof for the factfinder.

In response, Lederman argues that binding circuit precedent stands for the proposition that "plainly and unmistakably" is the burden of proof the employer is required to meet to establish a FLSA exemption.  To resolve these claims requires a short review of the evolution of our law applying the FLSA exemption.

As a textual matter, the phrase "plainly and unmistakably" is found nowhere in the FLSA, or in our early precedents interpreting that statute. The phrase's earliest occurrence in our circuit law is in *Schoenhals v. Cockrum*, 647 F.2d 1080 (10th Cir. 1981), which used the phrase in the context of statutory construction: "The [FLSA] constitutes humanitarian and remedial legislation. Exemptions must be narrowly construed and are limited to those establishments plainly and unmistakably within the terms and the spirit of the exemption invoked." *Id.* at 1081. The two cases cited for this proposition in *Schoenhals* were likewise addressed towards statutory construction, not evidentiary burdens. *See A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945) ("Any exemption from such humanitarian and remedial legislation must . . . be narrowly construed, giving due regard to the plain meaning of statutory language and the intent of Congress."); *Shultz v. Adair's Cafeterias, Inc.*, 420 F.2d 390, 393 (10th Cir. 1969) ("As remedial legislation [the FLSA's] exceptions must be narrowly construed.").

The phrase "plainly and unmistakably" surfaced again in *Jones v. Tiller*, 72 F.3d 138, *1 (10th Cir. 1995) (unpublished opinion). That language was a misquote from *Reich v. Wyoming*, 993 F.2d 739 (10th Cir. 1993), in which we said, "Exemptions to the FLSA are to be narrowly construed; the employer must show the employees fit 'plainly and unmistakenly within [the exemption's] terms.'" *Id.* at 741. *Reich*, in turn, misquoted a 1960 Supreme Court case, *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, which said, referring to the FLSA's

exemption for retail sales and service establishments, "We have held that these exemptions are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit." *Id.* at 392.

*Arnold* used the phrase "plainly and unmistakably" not in the context of an evidentiary standard, but in a discussion of whether undisputed facts were *legally* sufficient to make out an FLSA exemption. *See id.* at 391. Similarly, *Reich* and *Jones* considered whether undisputed facts established, as a matter of law, a "profession" exemption under the FLSA. *See Reich*, 993 F.2d at 741; *Jones*, 72 F.3d at *1. These cases support Frontier's position that "plainly and unmistakably" is not correctly applied as an evidentiary burden but as a legal standard.

More recently, some of our opinions may have appeared to support the notion that "plainly and unmistakably" refers to the employer's burden of proof. For example, in *Clements v. Serco, Inc.*, 530 F.3d 1224 (10th Cir. 2008), we said, "as the employer, Serco bears the burden of proving that the Employees fit 'plainly and unmistakably within the exemption's terms.'" *Id.* at 1227 (quoting *Ackerman*, 179 F.3d at 1264). *Clements*, however, reviewed a grant of summary judgment, and made the above statement with regard to the *legal* scope of FLSA exemptions. *See id.* Similarly, in *Ackerman*, we reviewed a legal question on undisputed facts. *See Ackerman*, 179 F.3d at 1264 ("[T]he question before us is

-11-

. . . whether the plaintiffs' merchandising activities were incidental to and in conjunction with their sales of Coca-Cola products such that the plaintiffs were covered by the FLSA exemption for outside salesmen. We review the district court's resolution of this legal question de novo . . . .") (citations and quotation marks omitted). The cases *Ackerman* cited for this proposition were *Reich* and *Arnold*, which, again, addressed a legal standard of construction rather than a factual standard of proof. *See id.*

Likewise, all of our other cases employing this phrase have done so in addressing legal rather than factual issues. *See Pacheco v. Whiting Farms, Inc.*, 365 F.3d 1199, 1206 (10th Cir. 2004) ("Defendants have demonstrated the packaging operations at Whiting Farms plainly and unmistakably fall within the agricultural exemption because those practices constitute secondary farming under FLSA."); *Rodriguez v. Whiting Farms, Inc.*, 360 F.3d 1180, 1184 (10th Cir. 2004) ("[E]xemptions under the FLSA are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit." (citation and quotation marks omitted)); *Welding v. Bios Corp.*, 353 F.3d 1214, 1218 (10th Cir. 2004) ("Bios is not entitled to summary judgment unless it can establish that the undisputed facts . . . plainly and unmistakably fit within the companionship services exemption."); *accord Baker v. Barnard Constr. Co.*, 146 F.3d 1214,

1217-18 (10th Cir. 1998); *Carpenter v. City & County of Denver*, 82 F.3d 353, 355 (10th Cir. 1996), *vacated on other grounds*, 519 U.S. 1145 (1997).

In sum, our cases stand for the proposition that in considering an FLSA exemption, a court must find that the claimed exemption falls "plainly and unmistakably" within the terms of the statute—not for the proposition that an employer need prove such an exemption by anything more than a preponderance of the evidence. Once a court finds the employer is eligible to claim the exemption, the factfinder reviews the disputed facts to determine if the exemption is met.

Other courts have confronted similar FLSA burden-of-proof issues and come to the conclusion that the proper standard is a preponderance. For example, the Seventh Circuit, in *Yi v. Sterling Collision Centers, Inc.*, 480 F.3d 505 (7th Cir. 2007), rejected the plaintiff-appellee's contention that the defendant was required to prove an FLSA exemption by a "clear and affirmative evidence" standard. *Id.* at 506-07. The Seventh Circuit traced the origin of the phrase "clear and affirmative evidence" in the FLSA context to our own opinion in *Donovan v. United Video, Inc.*, 725 F.2d 577 (10th Cir. 1984), in which we stated, "[t]he employer who asserts the exemption has the burden of establishing [the exemption] by clear and affirmative evidence." *Id.* at 581. The Seventh Circuit explained how this language was originally rooted in statutory-construction cases going back to the 1940's, but became "garbled" over time as it was repeated by

different courts, "the original meaning forgotten." *Yi*, 480 F.3d at 507. The Seventh Circuit concluded the appropriate burden of proof was a preponderance of the evidence, notwithstanding the language employed in *Donovan* and similar opinions. *See id.*

Recently, in an unpublished opinion, we endorsed *Yi*'s conclusion that a preponderance is the proper evidentiary standard for FLSA exemptions. That case involved another variation on the burden of proof since some courts had applied a "clear and affirmative evidence" standard in FLSA cases:

> Our use of 'clear and affirmative evidence,' [citing *Arnold*, *supra*] has lead [sic] to confusion whether this in fact means clear and convincing evidence—a burden beyond the preponderance of evidence standard traditionally applied in civil cases. This is not the case; instead, clear and affirmative evidence is simply an 'invocation of the familiar principle of statutory interpretation that exemptions from a statute that creates remedies that should be construed narrowly,' *Yi v. Sterling Collision Centers, Inc.*, 480 F.3d 505, 508 (7th Cir.2007), and "also that the burden of proof is on the [employer], since entitlement to an exemption is an affirmative defense." *Id.* at 507. "[A] silent or ambiguous record" is not affirmative evidence. *United States v. Bush*, 405 F.3d 909, 921 (10th Cir. 2005).

*Fowler v. Incor*, 279 F. App'x 590, 592 (10th Cir. 2008).

In sum then, just as some courts have mistakenly viewed "clear and affirmative evidence" as a heightened evidentiary standard, the same is true with the phrase "plainly and unmistakably." When our prior cases employing this phrase are read as a whole, they do not establish a heightened evidentiary requirement on employers seeking to prove an FLSA exemption. Instead, the

-14-

ordinary burden of proof—preponderance of the evidence—controls the jury's evaluation of whether the facts establish an exemption to the FLSA.

Thus, we conclude the district court should not have instructed the jury that "[a]n employer seeking an exemption from the overtime requirements of the FLSA bears the burden of proving that the particular employee fits plainly and unmistakably within the terms of the claimed exemption." Instead, the jury should have only been instructed to consider the evidence under the preponderance-of-the-evidence standard.

### D. Prejudice

Having found the jury instruction misstated the law, we must still determine whether the district court's legal error was prejudicial to Frontier. "[T]he judgment must be reversed 'if the jury might have based its verdict on the erroneously given instruction.'" *Wankier*, 353 F.3d at 867. "The 'might have' threshold, as its language suggests, requires reversal 'even if that possibility is very unlikely.'" *Level 3 Commc'ns, LLC v. Liebert Corp.*, 535 F.3d 1146, 1158 (10th Cir. 2008) (quoting *Wankier*, 353 F.3d at 867). "Only 'when the erroneous instruction could not have changed the result of the case' can we say the error is harmless and does not require reversal." *Id.* (quoting *World Wide Ass'n of Specialty Programs v. Pure, Inc.*, 450 F.3d 1132, 1139 (10th Cir. 2006)). "Although we may reverse the district court's judgment only if an erroneous instruction is prejudicial in light of the record as a whole, we note that '[j]ury

-15-

instructions outlining the appropriate burden of proof are almost always crucial to the outcome of the trial.'" *Karnes*, 162 F.3d at 1079 (quoting *Stevison*, 920 F.2d at 714).

Here, there were many disputed issues of fact relevant to the question whether Lederman was an outside salesman and therefore exempt from FLSA's overtime requirements. For example, conflicting evidence was presented regarding the amount of time Lederman spent out of Frontier's place of business. Lederman produced witnesses who held the same job as himself to testify that they spent eighty percent of their time in Frontier Fire's office. But Frontier presented evidence that Lederman was away from Frontier's place of business at least fifty percent of the time. Lederman himself testified that when soliciting contracts he would visit customers' job sites, and that he attended meetings at his customers' places of business.

Another disputed factual issue was the extent of Lederman's authority to finalize sales. Frontier presented testimony that the bids prepared by Lederman became binding when they were accepted by the customers. Frontier's witnesses testified that although Lederman's sales were formalized in a contract after the bid had been transmitted and accepted, this was a mere formality.

Despite this conflicting evidence, Lederman argues that the instructions as a whole were not prejudicial because they could not have seriously misled the jury. We disagree. The instruction spoke explicitly in terms of the burden of

proof—"an employer . . . bears the burden of proving that the particular employee fits plainly and unmistakably within the terms of the claimed exemption."  The instruction is most naturally read to require proof beyond a preponderance of the evidence.  And "instructions outlining the appropriate burden of proof are almost always crucial to the outcome."  *Stevison*, 920 F.2d at 714.

We recognize that the district court referred to the preponderance standard at other points in the instructions, both before and after the challenged instruction.  But those references did not clarify or negate the erroneous instruction.  "Where two instructions are given which are in direct conflict with each other, one of which is error and might have been followed by the jury, the giving of such instructions is generally said to be prejudicial."  *United States v. Wiseman*, 172 F.3d 1196, 1215 (10th Cir. 1999) (quoting *Gonzales v. United States*, 286 F.2d 118, 122 (10th Cir. 1960)); *see also Francis v. Franklin*, 471 U.S. 307, 322 (1985) ("A reviewing court has no way of knowing which of the two irreconcilable instructions the jurors applied in reaching their verdict.").  Although we have recognized that flawed instructions are sometimes harmless when "[c]onsidered in context," *United States v. Dowlin*, 408 F.3d 647, 667 (10th Cir. 2005), that is not true here because the correct portions of the instructions simply conflict with the erroneous portion without shedding further light upon it.[3]

---

[3]  We also note that *Dowlin*, and many similar cases, applied plain-error review rather than the stricter harmlessness standard we apply here.

-17-

Additionally, Lederman's counsel likely exacerbated the error by emphasizing the "plainly and unmistakably" standard at the start of his closing argument:

> [S]ome of you have sat on juries before, and you may be surprised to find out that the burden of proof in this case is different, not just from a criminal case, but for most civil cases. It's different because in this case on the issue of the exemption, it is the employer, the defendant, that has the burden of proving that Mr. Lederman fit plainly and unmistakably within the outside sales exemption.

App. 624.

We conclude "the jury might have based its verdict on the erroneously given" standard of proof. *Wankier*, 353 F.3d at 867. Accordingly, we find the district court's instructional error was prejudicial.[4]

## III. Conclusion

For the foregoing reasons, the jury's verdict is REVERSED, the judgment of the district court is REVERSED, and the case is REMANDED to the district court for further proceedings consistent with this opinion.

---

[4] Our prejudice analysis subsumes our analysis of Lederman's alternative argument that he was entitled to judgment as a matter of law regardless of any instructional error. The significant factual disputes discussed above preclude us from affirming on this ground.