**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 6, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

CROSS CONTINENT
DEVELOPMENT, LLC, a Colorado
limited liability corporation,

      Plaintiff-Appellant,

v.

TOWN OF AKRON, COLORADO, a
Colorado municipal corporation;
CARL S. McGUIRE, II, Esq., in his
official capacity as Attorney for the
Town of Akron,

      Defendants-Appellees.

and

THE AKRON TOWN COUNCIL;
THE BOARD OF TRUSTEES OF
THE TOWN OF AKRON; THE
COLORADO PLAINS REGIONAL
AIRPORT DEVELOPMENT
COMMITTEE,

Defendants.

No. 12-1391

(D.C. No. 1:09-CV-02413-WYD-KMT)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

---

    [*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Before **BRISCOE,** Chief Judge, **O'BRIEN** and **PHILLIPS**, Circuit Judges.

_____

With the hope of improving its economy, the small town of Akron, Colorado (Town) leased land near its airport to Cross Continent Development, LLC (CCD), a Colorado corporation. CCD was to develop the land, and the Town's economy would then reap the benefits. Unfortunately, this hopeful arrangement was not successful. Each party accused the other of breaching the Lease in its nascent stages, and this lawsuit followed.

CCD sued the Town asserting jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(1) and (a)(3). CCD alleged breach of contract and also claimed that the Town and the Town's attorney, Carl McGuire, violated CCD's Fourteenth Amendment rights to procedural and substantive due process under 42 U.S.C. § 1983. A jury found for defendants on all claims. On appeal, CCD argues that the district court's jury instructions on CCD's breach of contract claim were erroneous, and that the jury's verdicts on all claims were unsupported by substantial evidence. We have jurisdiction under 28 U.S.C. § 1291 and affirm in part, reverse in part, and remand.

**I**
*Factual Background*

"When reviewing a jury verdict, we review the record in favor of the prevailing party, and give that party the benefit of all reasonable inferences to be

2

drawn from the evidence." Miller v. Eby Realty Grp. LLC, 396 F.3d 1105, 1108 (10th Cir. 2005) (internal quotation marks omitted). With that in mind, the record tells the following story.

The Town is located in eastern Colorado and has a population of 1,700. Like many rural communities, the Town's economy is closely tied to agriculture. However, the Town has something that most small rural towns do not have—an airport with a 7,000-foot runway. The Akron Airport runway can handle large-body aircraft, which sets it apart from typical rural airports which are limited to single or twin-engine planes. The Town's airport, together with the Town's central location, provide a heightened potential for economic growth.

The Town Board (the mayor and six elected trustees) recognized this potential. It formed an advisory group called the Airport Development Committee, giving it the responsibility of recommending airport improvements to the Board. Armed with its special advisors, the Board pursued various ideas to grow the airport, none of which yielded significant returns for the Town. Only one new business began operating at the Akron Airport in the last twenty years.

It is against this backdrop that CCD enters our story. CCD had an idea. If it developed the land adjacent to the airport—opening things like new terminals, restaurants, and hotels—then perhaps the airport and the Town would prosper. So in March 2006, CCD approached the Board and got the ball rolling. It proposed that the Town lease to CCD the property on the north side of the airport, which

3

CCD would then sublease to other businesses for development. The Board agreed, and in May 2006, the Town and CCD entered into the Lease.

The important terms of the Lease are these. CCD received the exclusive right to develop the land adjacent to the airport for forty-nine years. CCD's "primary obligation" was to "develop the Leased Property for the benefit of the Town but without any cost or obligation to the Town other than compliance with the terms of th[e] Lease." Aplt. App. at 293, ¶ 5. Although CCD did not guarantee it would make improvements during the first three years of the Lease, it was obligated to present "a comprehensive plan for the development of the Leased Property" before December 31, 2008. Id. at 293, ¶ 5(a). The Lease required that, "[a]t a minimum, the Development Plan . . . include a proposed site plan, drainage plan, and building plan for the initial project development." Id. at 293-94, ¶ 5(a) (describing additional requirements of the development plan). Paragraph 21 addresses default and will become our focus in resolving the issues presented:

> 21. **Default**. A default shall occur if either Party hereto materially violates any provision of this Lease and, such violation continues without cure for a period of at least one year after receipt by the defaulting Party of written notice from the other Party of the existence of such breach and the obligation of the defaulting Party to cure such a breach. A default by either Party includes any failure to approve and implement the Development Plan. A condition by a Sublessee of [CCD] that constitutes a default under this Lease shall be considered a default by [CCD] for which the Town may demand cure. Upon an uncured default by [CCD], the Town may, at its option, terminate this Lease and/or recover damages for any losses

4

suffered by it.  Upon an uncured default by the Town, [CCD] may, at its option, terminate the Lease and/or recover damages for any losses suffered by it and its Sublessees.

Id. at 301, ¶ 21.

On November 3, 2008, CCD presented its development plan to the Committee and then to the Board.  CCD's materials consisted of a two-page written summary, and five pages of pictures.  The Board was not satisfied.  As a result, on January 5, 2009, the Town's attorney, Carl McGuire, sent a letter to CCD expressing the Board's belief that CCD was in violation of the Lease because it had failed to present a "comprehensive" development plan.[1]  The letter stated that "[t]he Town, after reviewing CCD's submissions, finds that the submitted documents do not fulfill CCD's obligations" because "CCD's submitted documents cannot be considered a comprehensive development plan."  Id. at 308, 311.

The conclusion of McGuire's letter ignited the present controversy:

> Accordingly, the Town hereby gives notice of default.  The Town asserts its rights under the Lease Agreement and terminates the Lease Agreement executed by the Town and [CCD] on May 10, 2006.

Id. at 311.  Richard Kusel, of CCD, testified that he interpreted "terminates" to

---

[1]  The letter also asserted that "CCD has failed to fulfill its obligations as Lessee pursuant to Paragraph 4 requiring maintenance of the Leased Property in accordance with the Town's past practices."  Aplt. App. at 311.  This refers to the provision of the Lease requiring CCD to "maintain the Leased Property in accordance with the Town's past practice, including mowing weeds and grass, maintaining walkways, and purchasing and maintaining adequate property damage and personal injury insurance coverage."  Id. at 293, ¶ 4.

5

mean that the Town would not honor the one-year cure provision in paragraph 21. By contrast, McGuire testified that the Board understood the letter to be the "notice" referred to in paragraph 21, and that CCD had one year to cure the violations. CCD never replied to the letter.

On February 11, 2009, McGuire sent a lease cancellation agreement to CCD. In the e-mail accompanying the attached agreement, McGuire wrote: "This Cancellation of Lease will clarify the rights and responsibilities of the Parties from January 5, 2009, forward." Aplee. Suppl. App. at 631. McGuire testified that the purpose of the cancellation agreement was to end the "limbo" of the one-year cure period. Robert Serlin, of CCD, testified that he refused to sign the cancellation agreement because "the Lease didn't exist anymore. It had been terminated. [The cancellation agreement] was a document that made no sense." Trial Tr. at 215. In reply to the e-mail, CCD announced that it had retained legal counsel. And on October 9, 2009, CCD initiated this action.

The following year, on January 25, 2010, McGuire sent another letter to CCD "to notify CCD that the Town is exercising its right to terminate the Lease Agreement pursuant to Paragraph 21 of the Lease Agreement." Aplt. App. at 283.

### *Procedural History*

This case was tried to a jury for seven days in late August 2012. The claims at issue were (1) breach of contract by the Town, (2) violation of substantive due process by the Town and McGuire, and (3) violation of

6

procedural due process by the Town and McGuire. The jury found for the defendants on all claims.

## II

On appeal, CCD raises two issues: First, the jury instructions erroneously stated the elements of a breach of contract claim under Colorado law. Second, the jury verdicts on all three claims were unsupported by substantial evidence.

### *Jury Instructions*

"We review a district court's decision to give a particular jury instruction for abuse of discretion, but we review de novo legal objections to the jury instructions." Lederman v. Frontier Fire Prot., Inc., 685 F.3d 1151, 1154 (10th Cir. 2012) (internal quotation marks omitted). "We read and evaluate the jury instructions in light of the entire record to determine if they fairly, adequately and correctly state the governing law and provide the jury with an ample understanding of the applicable principles of law and factual issues confronting them." Id. at 1154-55 (internal quotation marks omitted). "We do not decide whether the instructions are flawless, but whether the jury was misled in any way and whether it had an understanding of the issues and its duty to decide those issues." Id. at 1155 (alterations omitted) (internal quotation marks omitted). "So long as the charge as a whole adequately states the law, the refusal to give a particular requested instruction is not grounds for reversal." Id. (alterations omitted) (internal quotation marks omitted).

"If we determine that the trial court erred, we must then determine whether the error was prejudicial to [CCD]." Id. "The judgment must be reversed if the jury might have based its verdict on the erroneously given instruction." Id. (alterations omitted) (internal quotation marks omitted). "Under our precedents, reversal is necessary even if that possibility is very unlikely." Wankier v. Crown Equip. Corp., 353 F.3d 862, 867 (10th Cir. 2003) (alterations omitted) (internal quotation marks omitted). "Only when the erroneous instruction could not have changed the result of the case can we say the error is harmless and does not require reversal." Level 3 Commc'ns, LLC v. Liebert Corp., 535 F.3d 1146, 1158 (10th Cir. 2008) (internal quotation marks omitted).

At the close of evidence, the court instructed the jury as follows:

**INSTRUCTION NO. 23**

For Plaintiff Cross Continent Development, LLC to recover from Defendant Town of Akron on its claim for breach of contract, you must find that all of the following have been proved by a preponderance of the evidence:

1. Defendant Town of Akron entered into a lease agreement with Plaintiff under which Defendant Town of Akron leased property to Plaintiff;
2. Defendant Town of Akron failed to comply with the terms of the lease including, but not limited to, providing Plaintiff one year to cure any alleged default under the lease; and
3. That Plaintiff substantially performed its part of the contract.

If you find that any one or more of these statements has not been proved, then your verdict must be for Defendant Town of Akron. On the other hand, if you find that all of these statements have been

8

proved, then your verdict must be for Plaintiff Cross Continent Development, LLC.

Aplt. App. at 249. CCD objected to the third ("substantial performance") element. In overruling CCD's objection, the court stated that the questions of whether the development plan is comprehensive and whether the Town's notice of default functioned to terminate the Lease "are jury questions as to whether or not [CCD] substantially performed its part of the contract, and I think that's something that the parties need to argue and the jury needs to consider." Trial Tr. 1043-44.

Rule 51.1(1) of the Colorado Rules of Civil Procedure dictates that "[i]n instructing the jury in a civil case, the court shall use such instructions as are contained in Colorado Jury Instruction (CJI) as are applicable to the evidence and the prevailing law." Colo. R. Civ. P. 51.1(1). Rule 51.1(2) cautions, however, that "[i]n cases in which . . . the factual situation . . . warrant[s] a departure from the CJI instructions, the court shall instruct the jury as to the prevailing law applicable to the evidence . . . using CJI instructions as models as to the form so far as possible." Colo. R. Civ. P. 51.1(2). With Rule 51.1 in mind, the court clearly fashioned Instruction 23 after the relevant CJI instructions. See CJI-Civ.4th 30:10 ("Contract Performance—Breach of Contract—Elements of Liability").

Relevant also is this admonishment in the Notes on Use of CJI-Civ.4th

9

30:10:

> Paragraph 3 ["substantial performance"] of this instruction should be used only if the plaintiff's performance or substantial performance of the contract is a condition precedent to plaintiff's right to recover under the contract. Whether a breach of contract is material and therefore excuses the other party from performance is generally a question of fact.

CJI-Civ.4th 30:10, note 2 (citations omitted); see also 3A Arthur L. Corbin, Corbin on Contracts § 700 (1963) ("When a contract has been made for an agreed exchange of two performances, one of which is to be rendered first, the rendition of this one substantially in full is a constructive condition of the other party's duty to render the second part of the exchange."). Referring to this Note, CCD asserted that its substantial performance was not a condition precedent to its right to recover under the Lease. Trial Tr. at 1042-43 ("[T]he jury can find that [CCD] breached the contract by not providing a Comprehensive Development Plan, and still allow [CCD] to recover under breach of contract claim, as a result of not being provided the year to cure. So I don't think paragraph three should be there, even though it's right out of the stocks.").

Turning our focus to the terms of the Lease, only when one party "materially violates" the Lease may the other send written notice and begin the one-year clock. Aplt. App. at 301, ¶ 21. Colorado and commentators agree that finding a material breach precludes finding substantial performance, and vice versa. See, e.g., W. Distrib. Co. v. Diodosio, 831 P.2d 1053, 1058 (Col. 1992)

10

(en banc) ("Substantial performance occurs when, although the conditions of the contract have been deviated from in trifling particulars not materially detracting from the benefit the other party would derive from a literal performance, the defendant has received substantially the benefit he expected." (alterations omitted) (internal quotation marks omitted)); John D. Calamari & Joseph M. Perillo, The Law of Contracts § 157(b), at 248 (1st ed. 1970) ("Substantial performance is the antithesis of material breach. Thus if it is determined that a breach is material it follows that substantial performance has not been rendered."). As such, a material violation under paragraph 21 is coextensive with a failure to substantially perform. And once the one-year clock is activated, the offending party (CCD) must cure its material violation within one year of receiving written notice, lest it be in default. Only default by the offending party (CCD) triggers the innocent party's (the Town's) right to "terminate."

With that in mind, we can see that Instruction 23 assures the Town of a favorable verdict. The instruction directs that if CCD failed to substantially perform, then it cannot recover for the Town's violation of a paragraph 21 obligation. And, under the Lease, paragraph 21 obligations arise only where there is an *absence* of substantial performance. Therefore, so long as CCD failed to substantially perform, Instruction 23 would give the Town the upper hand in the jury's view, and guarantees the Town victory no matter how or when it terminates the Lease.

11

By the plain terms of paragraph 21, however, the Town was not entitled to the benefit Instruction 23 gave it. The Town's right of termination could not vest while any of four things were true: (1) CCD committed no material breach; (2) CCD's breach persisted for less than one year; (3) CCD's breach persisted for less than one year from the time CCD received proper notice; or (4) the Town did not provide proper notice of breach, meaning either that it provided no written notice of any kind, or that it provided only defective written notice that failed to indicate the "existence" of CCD's breach and CCD's "obligation" to cure. Proof of any one of these renders the Town's termination violative of paragraph 21. At trial, CCD attempted to prove two of them. It argued in response to (1) that its development plan was comprehensive and therefore it committed no breach. And it argued in response to (4) that the Town's notice was defective because the notice indicated that the Town would not honor CCD's right to cure.

The bottom line is that Instruction 23 made CCD's substantial performance a necessary condition ("condition precedent") to CCD's ability to recover on its breach of contract claim, although such a condition is inconsistent with the terms of the Lease. The jury should have been permitted to find that termination without proper notice constituted an actionable violation of paragraph 21 notwithstanding CCD's substantial performance or lack thereof. By instructing the jury to the contrary, the district court erred.

Of course, "[o]nly when the erroneous instruction could not have changed

12

the result of the case can we say the error is harmless and does not require reversal." Level 3 Commc'ns, 535 F.3d at 1158 (internal quotation marks omitted). Here, the dispute over the meaning of the word "terminates" in McGuire's e-mail heightens the possibility that the jury would have decided the breach of contract claim differently if it had been properly instructed. Therefore, the error was prejudicial to CCD and we must remand on the breach of contract claim.

### *Substantial Evidence*

CCD contends that the jury's verdicts were not supported by substantial evidence. The Town points out that CCD never moved under 50(a) or 50(b) for judgment as a matter of law,[2] which, it says, "bars appellate review of the sufficiency of the evidence." Aplee. Br. at 65-66. CCD, however, insists that it can escape this procedural requirement through the "plain error exception." Aplt. Reply Br. at 13. According to CCD, even absent a Rule 50 motion, the plain error exception permits appellate review "where such plain error is apparent on the face of the record that failure to review would result in [a] manifest miscarriage of justice." Aplt. Reply Br. at 13 (misquoting Cleveland v. Piper Aircraft Corp., 890 F.2d 1540, 1551 (10th Cir. 1989)).

Simply put, CCD is wrong. Failure to move for judgment as a matter of

---

[2] Before giving the jury instructions and beginning closing arguments, the court asked counsel for CCD whether he had "any Rule 50 motions." Trial Tr. at 1060. Counsel replied: "No, Your Honor." Id.

law absolutely precludes appellate review of the sufficiency of the evidence. See, e.g., Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc., 546 U.S. 394, 404 (2006) (holding that a party's "failure to comply with Rule 50(b) forecloses its challenge to the sufficiency of the evidence"); Cavanaugh v. Woods Cross City, 718 F.3d 1244, 1250 n.1 (10th Cir. 2013) ("[T]he sufficiency-of-the-evidence issue [Appellant] raised could only be preserved for appeal by including it in a Rule 50(a) motion at the close of evidence *and* a Rule 50(b) motion after the jury verdict." (emphasis in original)); 9 James Wm. Moore et al., Moore's Federal Practice § 50.91 (3d ed. 2011) ("[A] party's failure to properly assert pre-verdict and renewed motions for judgment on the basis of insufficient evidence ordinarily waives the right to challenge sufficiency of the evidence on appeal."). Without a Rule 50 motion, we are put in the position of reviewing the jury's judgment itself, rather than the trial judge's response to it. And "[f]ederal appellate courts simply do not directly review jury verdicts." Coughlin v. Capitol Cement Co., 571 F.2d 290, 297 (5th Cir. 1978).

Therefore, CCD failed to preserve the sufficiency-of-the-evidence issue for appeal. As such, we decline to review the record for plain error, and we affirm the jury's verdicts as to the due process claims against the Town and McGuire.

## III

For his part, McGuire challenges the district court's decision to give the jury the option of awarding punitive damages against him in his official capacity,

14

which he says contravenes federal law. Specifically, he argues that "[b]ecause the basis of the District Court's decision [to allow the jury to consider awarding punitive damages against him]—Youren v. Tintic Sch. Dist., 343 F.3d 1296, 1307 (10th Cir. 2003)—contravenes federal law, CCD should be precluded from requesting punitive damages against [him] under any circumstances." Aplee. Br. at 78-79; see also id. at 80-82 (listing cases in other circuits that disagree with Youren). McGuire makes no effort to distinguish Youren or to suggest a limitation in its holding. In short, McGuire urges that "Youren is an anomalous outlier that should be disregarded." Id. at 83.

Of course, the issue is moot because we affirm the jury's verdicts that McGuire committed no due process violation. What is more, we must adhere to prior rulings of our court in the absence of our court's issuance of an en banc decision overruling the prior panel decision. In re Smith, 10 F.3d 723, 724 (10th Cir. 1993). We feel compelled, however, to note our agreement with McGuire's characterization of Youren as an anomalous outlier. After all, if "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity," Kentucky v. Graham, 473 U.S. 159, 166 (1985) ("It is *not* a suit against the official personally, for the real party in interest is the entity." (emphasis in original)), and "a municipality is immune from punitive damages under 42 U.S.C. § 1983," City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981), then individuals sued in their official capacity should be immune

15

from punitive damages as well.  The conclusion seems inescapable.  Indeed, the force of this reasoning has led courts within our own circuit to ignore <u>Youren</u> when dismissing punitive damage claims in official-capacity § 1983 suits.  <u>See, e.g.</u>, <u>Fernandez v. Taos Mun. Sch. Bd. of Educ.</u>, 403 F. Supp. 2d 1040, 1043 (D.N.M. 2005) (Kelly, J., sitting by designation).

## IV

We AFFIRM the jury's verdict on the due process claims.  We conclude that Instruction 23 was erroneous and prejudicial to CCD.  We therefore REVERSE the jury's verdict on the breach of contract claim and REMAND.


Entered for the Court


Mary Beck Briscoe
Chief Judge