**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 23, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

SHAYNE KYLE ARMAJO,

Defendant – Appellant.

No. 21-8021

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**
**(D.C. No. 0:20-CR-00180-SWS-1)**

---

O. Dean Sanderford, Assistant Federal Public Defender (Virginia L. Grady, Federal Public Defender, with him on the briefs), Denver, Colorado, for Defendant-Appellant.

Timothy J. Forwood, Assistant United States Attorney (L. Robert Murray, Acting United States Attorney with him on the brief), Cheyenne, Wyoming, for the Plaintiff-Appellee.

---

Before **HARTZ**, **SEYMOUR,** and **BALDOCK,** Circuit Judges.

---

**SEYMOUR**, Circuit Judge.

---

Under the Federal Rules of Evidence, a party may introduce evidence of another's prior bad acts if it is presented for a proper purpose. *See* Fed. R. Evid. 404(b). Mr. Armajo, on trial for stabbing his uncle, sought to present evidence of his uncle's prior

assaults in order to bolster a self-defense claim. We consider whether the district court abused its discretion when it ruled that this was a permissible use under Rule 404(b) but nevertheless excluded most of the proffered evidence under Rule 403 because its probative value was substantially outweighed by the risk of undue prejudice.

# I

On the day of the stabbing, Shayne Armajo and his uncle, Eli Armajo, were headed to their shared home after a day spent drinking, smoking marijuana, and arguing. As they traveled down a country road in a remote portion of Wyoming's Wind River Indian Reservation, things came to a head when Eli declared he had "had enough" of his nephew and pulled the truck over so they could "duke it out."[1] Rec., vol. III at 696–97. What happened next is disputed.

At trial, Eli testified that he got out of the truck, met Shayne at the tailgate, and started swinging. Eli landed several blows, bloodying Shayne's face and breaking his glasses. Shayne then pulled out a buck knife and began slashing. Eli tried to fend him off, but Shayne knocked Eli to the ground and stabbed him twice in the leg. According to Eli, Shayne then returned to the truck and drove away, leaving Eli bleeding by the side of the road. Fortunately, a passerby spotted him, and authorities were able to get him to a hospital. He was treated and released the next day.

---

[1] Following defendant's lead, we refer to him and his uncle by their first names to avoid confusion.

The jury never heard directly from Shayne regarding his version of events. In the aftermath of the stabbing, he told investigators he had no memory of what happened, and he did not testify at trial. Nevertheless, his counsel tried to cast the stabbing as self-defense. Counsel suggested Shayne had good reason to fear his uncle. Although Eli was older, he was substantially heavier and still vigorous, bragging at trial that he could lift a 700-pound log. And Eli had shown himself capable of doing Shayne serious harm in the past. A Bureau of Indian Affairs officer testified that he arrived at the scene of a reported fight between the two in 2018 and found Shayne covered in his own blood, having been beaten by his uncle, who was drunk. Shayne was sent to the hospital in an ambulance, and Eli was charged with battery and taken to jail.

Shayne's attorneys also highlighted evidence that it was Eli, not Shayne, who was the aggressor on this occasion. Eli had, by his own admission, instigated the fight and landed several blows on Shayne. Investigators found Shayne's broken glasses at the scene, stained with his blood, and they found more blood spattered across the steering wheel of Eli's truck. When Shayne awoke from his stupor, he had a bloody cut across his torso and a hole slashed through the chest of his sweatshirt. Moreover, although authorities found Shayne's knife near his mattress, forensic examination of the blade showed no signs of human blood. Taken together, the defense argued, the evidence showed that it was Eli, not Shayne, who escalated the fight by drawing a knife, and that Shayne had only stabbed Eli because he reasonably believed his life to be in danger.

The jurors were apparently not convinced, at least not fully. After deliberating for five hours, they returned a mixed verdict: guilty on a charge of assault resulting in serious bodily injury, not guilty on a charge of assault with a dangerous weapon with intent to do bodily harm.

## II

> "A person may resort to self-defense if he reasonably believes that he is in imminent danger of death or great bodily harm, thus necessitating an in-kind response." *United States v. Toledo,* 739 F.3d 562, 567 (10th Cir. 2014). A defendant's "burden of production to warrant a self-defense instruction is not onerous." *Id.* at 568 (internal quotation marks omitted). It requires only that there be "evidence sufficient for a reasonable jury to find in his favor." *Id.* at 567.

*United States v. Barrett*, 797 F.3d 1207, 1218 (10th Cir. 2015). Because Shayne clearly met this burden, the crux of this appeal concerns evidence the jury never heard. To make its case, the government was required to prove beyond a reasonable doubt that the stabbing was not an act of self-defense, i.e., that Shayne lacked a genuine and reasonable belief that he was in imminent danger of death or great bodily harm and that his use of force was necessary. *See id.* (citing *Toledo,* 739 F.3d at 567).

Hoping to stymie the government on this point, Shayne filed notice before trial that he intended to present evidence not only of the beating he took from his uncle in 2018, but of an alleged assault by Eli on his disabled brother in 2014 and several alleged assaults on a girlfriend, including a physical assault in 2015 and a sexual assault in 2017. Shayne argued that this evidence was admissible under Rule 404(b) because evidence that Eli had attacked people in the past, together with evidence that Shayne had known of

4

the attacks, would tend to show that Shayne had good reason to fear Eli and therefore to believe it necessary to meet force with force.

During a hearing on the matter, the district court ruled that Shayne would be allowed to present evidence of Eli's 2018 assault on him, but the court barred evidence of the other alleged assaults. The court agreed that the evidence served a valid purpose under Rule 404(b) because Shayne's state of mind was pivotal on the issue of self-defense. But the court also held that the evidence was still subject to Rule 403, which provides that a trial court may bar relevant evidence if its probative value is substantially outweighed by certain prudential concerns, such as the risk of unfair prejudice. With that, the court turned to the balancing analysis mandated by Rule 403.

On the probative side of the scale, the court concluded that only Eli's 2018 assault on Shayne was highly probative to his state of mind at the time of the incident because it happened relatively recently and involved an attack on the defendant himself. By contrast, the other alleged assaults were more temporally remote and involved alleged assaults on others, a lack of similarity that "substantially reduced" their probative value. Rec., vol. III at 37. This was especially true of the alleged sexual assault, as it involved a categorically different kind of aggression.

Meanwhile, on the prejudicial side of the scale, the court believed presenting evidence of the other assaults risked wasting time and confusing the issues. Unlike the 2018 assault on Shayne, which was documented in a police report and ended in a conviction, the precise circumstances of the other alleged assaults were not well

documented. Consequently, the court reasoned, proving exactly what happened would require "mini trials" and confuse the factual issues the jury had to consider. Most of all, the court said the evidence risked unfair prejudice. Presented with allegations that Eli had beaten a woman and a person with disabilities, the jury might be tempted to believe he was simply a bad person and therefore got what he had coming to him. Concluding that these risks substantially outweighed the proffered evidence's probative value, the court excluded it under Rule 403.

**III**

Shayne argues on appeal that the district court committed a legal error when it discounted the probative value of the other assaults due to their lack of similarity with the incident in question. He contends that, unlike in the typical case where a prosecutor offers the Rule 404(b) evidence to prove the defendant's knowledge or identity, similarity is simply not a relevant consideration in the self-defense context where the purpose is to show the defendant's own state of mind. As a result of the error, he claims, the court mistakenly skewed the balance in favor of exclusion when conducting Rule 403's balancing test.

In assessing the district court's decision, we review its legal interpretation of the Federal Rules of Evidence de novo and its application of the rules for abuse of discretion. *United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1132 (10th Cir. 2014) (citing *United States v. Griffin*, 389 F.3d 1100, 1103 (10th Cir. 2004)). A district court does not abuse its discretion if its ruling "falls within the bounds of permissible choice in the

circumstances and is not arbitrary, capricious, or whimsical." *Id.* (citing *United States v. Smith*, 534 F.3d 1211, 1218 (10th Cir. 2008)).

As an initial matter, the district court was correct in holding that specific instances of a victim's violent conduct may be admissible in a self-defense case to prove the defendant's state of mind. Although we have previously declined to decide whether Rule 404(b) permits the use of other-act evidence in this manner, *see United States v. Talamante*, 981 F.2d 1153, 1157 (10th Cir. 1992), we see no reason to avoid the question here.

Rule 404(b)(1) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." But Rule 404(b)(2) provides that such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." This list of permissible uses is illustrative, not exhaustive. The rule admits all other-act evidence except that tending to prove only propensity. *United States v. Tan*, 254 F.3d 1204, 1208 (10th Cir. 2001). Accordingly, we hold that specific instances of a victim's violent conduct, when known to the defendant, may be admitted to prove the defendant's state of mind in a self-defense case. *Accord United States v. Bordeaux*, 570 F.3d 1041, 1049 (8th Cir. 2009); *United States v. Saenz*, 179 F.3d 686, 688 (9th Cir. 1999); *Government of Virgin Islands v. Carino*, 631 F.2d 226, 229 (3d Cir. 1980); *see also* Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence*, Westlaw § 4:25 (4th

ed., May 2021 update); David P. Leonard, *The New Wigmore: Evidence of Other Misconduct and Similar Events*, Westlaw § 8.5 (2d ed., 2020 Supp.).

A valid purpose under Rule 404(b) is not the end of the story, however. Even otherwise relevant evidence may be subject to exclusion under Rule 403, which provides that evidence may be excluded if its probative value is substantially outweighed by a danger that it will lead to unfair prejudice, confusion of the issues, or wasted time. *See* Fed. R. Evid. 403; *Tan*, 254 F.3d at 1207–08. The district court was therefore correct to assess the probative value of the evidence and weigh it against the associated prudential concerns. And we see no abuse of discretion in the way the court struck the balance.

We agree with Shayne insofar as he argues that the relationship between the similarity of the incident and its probative value may vary depending on the context. When presented by a prosecutor to prove the defendant's identity or knowledge, the degree of similarity between the extrinsic conduct and the alleged offense is almost always central to determining the evidence's probative value. *See United States v. Mares*, 441 F.3d 1152, 1157–58 (10th Cir. 2006); *United States v. Davis*, 636 F.3d 1281, 1297–98 (10th Cir. 2011). By contrast, in a self-defense case, the link between similarity and probative value may be more attenuated. For example, if a victim once bragged about stabbing a man in the neck with a ballpoint pen for selling a fake watch, the evidence is likely to be probative of the defendant's reasonable fear, whether or not she has also sold the victim counterfeit goods. *See United States v. James*, 169 F.3d 1210, 1211, 1214–15 (9th Cir. 1999) (en banc). The probative value survives the dissimilarity because the

attack demonstrates the victim's willingness to use potentially deadly force at the slightest provocation.

Still, Shayne overstates his case when he argues that similarity is simply irrelevant in the self-defense context. All other things being equal, the probative value of a victim's prior act of violence will generally be greater when it involves an attack on the defendant or occurs under circumstances that suggest to the defendant that he could be next. In this case, Eli's 2018 assault on Shayne was at least somewhat probative as to Shayne's state of mind because it showed Shayne knew that Eli was willing and able to do him serious harm when drunk. Eli's alleged assaults on a disabled brother and a domestic partner would be unlikely to have such salience, even if it could be shown that Shayne was aware of them. Indeed, as the district court noted, the assaults appear not to have troubled Shayne overly much, as he continued to live and socialize with his uncle during the years that followed. Moreover, nothing in Shayne's proffer suggested that these assaults involved the use of a weapon or resulted in serious bodily harm. Given these dynamics, the district court committed no legal error when it considered similarity as a factor relevant to the probative-value analysis.

Turning to the court's assessment of the prejudicial risks, we likewise find no reversible error. The court's primary concern, unfair prejudice, was valid. For the purposes of Rule 403, "unfair prejudice" means "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403 Advisory Committee's Note to the 1972 Proposed Rules. Presentation of

evidence that Eli had abused a disabled person and a woman would almost certainly have stirred a strong emotional response from jurors and would likely have tempted some to acquit Shayne out of a misguided sense of justice. Moreover, as the district court also noted, the jurors may have used the evidence to infer that Eli was a violent person and therefore was likely to have been the aggressor in the altercation with Shayne, precisely the sort of propensity inference that Rule 404(b) forbids. Although jury instructions might have mitigated this problem, it was still a factor the district court could consider as part of its Rule 403 balancing analysis.

As for the risk that admission of the evidence would have led to "mini trials" due to insufficient documentation, Shayne may be right that the district court's concerns were misplaced. He argues that although courts may consider waste of time and confusion of issues in their balancing analysis, the kind of other-act evidence at issue in this case would not ordinarily entail these problems because what is being proved is the defendant's subjective belief in the danger posed by the victim and the reasonableness of that belief. Shayne points out that the truth of what transpired is largely beside the point so that in-depth factfinding would not usually be required. He contends that here, for example, there would have been no need to conduct "mini trials" because Eli's actual culpability was not at issue. All that was required was some evidence of what Shayne witnessed or was told about Eli's alleged assaults, which Eli could have rebutted with a flat denial. Thus, presenting evidence of Eli's prior acts would probably not have wasted time or confused the issues. Even assuming the correctness of this argument, given that

the evidence was likely to be highly prejudicial and was of only marginally probative value to begin with, we are persuaded the district court was justified in excluding the evidence under Rule 403.

## IV

Evidence of a victim's prior violent acts may be admissible in a self-defense case to prove the defendant's state of mind, but it is subject to Rule 403's balancing test. As applied here, the district court reasonably concluded that the probative value of the victim's alleged assaults was substantially outweighed by the risk of unfair prejudice. Consequently, we hold that the district court did not abuse its discretion when it excluded the contested evidence.

AFFIRMED.