**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 9, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

                             No. 23-7017

ELIJAH DEWAYNE HICKS,

    Defendant - Appellant.
_____

**Appeal from the United States District Court**
**for the Eastern District of Oklahoma**
**(D.C. No. 6:21-CR-00379-BMJ-1)**
_____

Stuart W. Southerland, Assistant Federal Public Defender (Scott Graham, Interim Federal Public Defender, and Robert Ridenour, Assistant Federal Public Defender, with him on the brief), Office of the Federal Public Defender, Muskogee, Oklahoma, for Defendant-Appellant.

Lisa C. Williams, Special Assistant United States Attorney (Christopher J. Wilson, United States Attorney, with her on the brief), Office of the United States Attorney, Muskogee, Oklahoma, for Plaintiff-Appellee.
_____

Before **BACHARACH**, **BALDOCK**, and **KELLY**, Circuit Judges.
_____

**BALDOCK**, Circuit Judge.
_____

Defendant Elijah Dewayne Hicks shot and killed his cousin Timothy Ray Buckley in the middle of a residential street. Defendant knew Buckley had a long

history of violence in the community when intoxicated, as he was at the time of the shooting. Defendant offered evidence that Buckley knocked out his own girlfriend and then charged after him. Defendant shot Buckley four times and claimed self-defense. The Government, on the other hand, theorized Defendant intentionally murdered Buckley because he had disrespected him, pointing to a plethora of non-lethal alternatives Defendant could have exercised. Defendant recognized the issue as critical to his defense and requested a one-sentence instruction from our decision in *United States v. Toledo*, informing the jury he had no legal duty to retreat or exhaust alternatives before acting in self-defense. 739 F.3d 562 (10th Cir. 2014). The district court refused. We hold that refusal deprived the jury of important law governing Defendant's sufficiently raised self-defense claim and prejudiced his case. Exercising jurisdiction under 28 U.S.C. § 1291, we reverse and remand for a new trial.

## I.

Timothy Buckley, his mother, Eugenia Holahta, and his girlfriend, Jessica Harjo attended the Watermelon Festival in Hanna, Oklahoma. Buckley and Harjo had been drinking "a lot" of alcohol, including fruit soaked in liquor. On the way home, Buckley and the others stopped by a store in Hanna so Buckley could buy a six pack of beer. Continuing their journey, they stopped at Buckley's sister Elizabeth's house around 11:00 p.m. After visiting inside for a while, Buckley and the others gathered around the back of their vehicle in Elizabeth's driveway to converse.

Defendant celebrated his birthday that same evening. Sometime before midnight, Defendant and his cousin Jaylon Heneha walked down the street in front of

2

Elizabeth's house on their way to a party a few blocks away. As Defendant passed by the house, Buckley shouted something to the effect of: "Hey, get over here." Buckley intimidated Defendant. He was 6'2" and 281 pounds. Defendant knew he had a reputation for violence when drunk. He had experienced it firsthand. Defendant alleged Buckley had assaulted him and his friends multiple times in the past, going so far as holding knives to his friends' throats. So when Buckley called him over, Defendant felt obligated to comply. Buckley and the other family members knew Defendant and greeted him warmly. Buckley and Defendant chatted cordially about Defendant's birthday plans. The others overheard the two laughing and joking together for a few minutes.

But the tone shifted when Buckley suddenly asked Defendant, "was you talking shit about me?" Defendant alleges Buckley said: "If I find that out again, I'm going to kill you," then finished his beer and tossed it aside. Buckley and Defendant made their way onto the street in front of Elizabeths' house as their argument escalated. The two stood ten to fifteen feet apart, facing each other as they argued. Jessica Harjo—Buckley's girlfriend—heard the argument, walked into the street, and stepped in between Defendant and Buckley to break up the impending fight.

The parties contest what happened next. Testifying for the defense, Harjo said Buckley punched her with such force that she fell to the ground and blacked out. Harjo said it was not the first time Buckley had hit her. As part of the Government's case-in-chief, Elizabeth Buckley testified Buckley merely pushed Harjo aside with one arm

3

and she did not fall.[1]  Next, Buckley began advancing towards Defendant.  Defendant described Buckley as "running at [him] like a linebacker."  He "figured" Buckley had a knife on him.  Defendant said he believed Buckley was going to kill both him and Harjo.  At that point, Defendant took two steps back, unholstered his loaded and chambered nine-millimeter pistol, and fired four shots into Buckley's body.  Defendant maintained he fired multiple shots because Buckley was "still running at [him]."  Buckley turned out to be unarmed.  A subsequent medical examination revealed Buckley's blood alcohol concentration was .13.

Defendant fled the scene on foot.  He dropped his handgun in a nearby alley.  Defendant remained at large for nearly four months after the shooting.  He stopped using his cell phone, social media accounts, and did not return home.  Defendant testified he ran because he did not think anyone would believe he acted in self-defense.

The Government charged Defendant with three counts: (1) second-degree murder of Timothy Buckley in Indian Country, in violation of 18 U.S.C. §§ 1111(a), 1151 and 1153; (2) use of a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c); and (3) causing the death of a person in the course of a § 924(c) offense, in violation of 18 U.S.C. § 924(j).  Defendant exercised his right to a jury trial.  The Government's trial theory was that Defendant intentionally murdered Buckley because he felt "disrespected in the street."  The Government sought to persuade the jury that Defendant had many non-lethal alternatives such as calling the police, going to his

---

[1] FBI Special Agent Constantine Bucuvalas responded to the scene on the night of the shooting.  She testified that Harjo had no visible injuries.

4

friend's house for backup, firing a warning shot, getting into a fistfight with Buckley, or simply turning around and walking away. Defendant's decision to forgo these options, the Government argued, revealed his intent to murder Buckley. On the other hand, Defendant argued he acted in self-defense and defense of another because he imminently feared his and Harjo's death. Defendant argued his fear was reasonable in large part because he knew Buckley's violent reputation and history.

At the conclusion of the evidence, the district court issued twenty-eight jury instructions, three of which are relevant here. Instruction No. 12 directed the jury to consider evidence pertaining to Timothy Buckley's character or reputation for violence for the purpose of determining whether Defendant was the aggressor in the confrontation. Instruction No. 13 informed the jury that it may consider evidence of Defendant's flight after the confrontation as showing consciousness of guilt. Finally, Instruction No. 19, the Tenth Circuit Pattern Instruction on self-defense, advised the jury that Defendant was entitled to use as much force as reasonably necessary to defend himself or another against an immediate threat—including force likely to cause death—if he reasonably believed it necessary to prevent death. Notably absent from the set of instructions was any guidance to the jury on the law pertaining to the Government's theory that Defendant failed to retreat or exhaust other alternatives before shooting Buckley. The jury returned a guilty verdict on all three counts. The district court sentenced Defendant to concurrent 240-month sentences on Counts One

and Three, followed by a mandatory-minimum, 120-month consecutive sentence on Count Two.[2]

On appeal, Defendant raises three challenges to the district court's jury instructions.[3]  Defendant argues the district court: (A) plainly erred in phrasing its instruction on Buckley's reputation for violence; (B) abused its discretion by giving an instruction on Defendant's post-confrontation flight; and (C) erred by refusing to instruct the jury there is no duty to retreat or exhaust alternatives before using force in self-defense.  We address each in turn and find merit only in Defendant's third argument.

---

[2] Defendant argues the district court violated his Fifth Amendment Double Jeopardy rights by sentencing him on multiplicitous counts.  Defendant, the Government, and the district court all agree 18 U.S.C. § 924(c) is a lesser-included offense of 18 U.S.C. § 924(j).  The district court pronounced it would vacate Defendant's conviction on Count Two if the jury convicted Defendant on both Count Two and Three.  But more than a year passed between Defendant's conviction and sentencing, and neither the parties nor the court raised the issue at sentencing.  We decline to reach the issue because we vacate Defendant's convictions and remand for a new trial.  *See United States v. McGirt*, 71 F.4th 755, 774 (10th Cir. 2023).

[3] Defendant also challenges his convictions on Counts Two and Three on grounds that the district court erred in concluding second-degree murder is a crime of violence for the purposes of 18 U.S.C. §§ 924(c) and (j).  This argument is squarely foreclosed by our precedent.  In *United States v. Kepler*, we held federal second-degree murder is categorically a crime of violence as defined by § 924(c)(3)(A) because its elements necessarily require a defendant's use, attempted use, or threatened use of physical force against the person or property of another.  74 F.4th 1292, 1303 (10th Cir. 2023).  Bound by *Kepler*, we reject Defendant's argument and hold the district court did not err in denying his motion to dismiss.

## II.

As a general matter, "[t]he purpose of jury instructions is to give jurors the correct principles of law applicable to the facts so that they can reach a correct conclusion as to each element of an offense according to the law and the evidence." *United States v. Kahn*, 58 F.4th 1308, 1317 (10th Cir. 2023). In a criminal trial, a defendant is entitled to an instruction on any recognized defense for which sufficient evidence exists for a reasonable jury to find in his favor. *United States v. Britt*, 79 F.4th 1280, 1286 (10th Cir. 2023) (citations omitted). In determining the sufficiency of the evidence, "we accept the testimony most favorable to the defendant." *Id*. (citing *United States v. Toledo*, 739 F.3d 562, 567 (10th Cir. 2014)). This includes "giving full credence to the defendant's testimony," even if it is partially contradicted by other evidence. *Id*.

## A.

First, Defendant argues the district court erred in instructing the jury on Buckley's character or reputation for violence by omitting his separate proposed instruction on Buckley's prior violent acts. Because Defendant failed to object to the district court's final jury instruction, we review for plain error.[4] Under the demanding

---

[4] When asked if he had objections to the district court's final jury instructions, Defendant failed to object to the omission of his requested instruction number six on Buckley's prior violent acts, and the court's final instruction number twelve on Buckley's character or reputation for violence. *See United States v. Walker*, 74 F.4th 1163, 1187 (10th Cir. 2023) (reviewing for plain error review where defendant tendered a jury instruction but failed to object to its omission from court's instructions when prompted). Furthermore, we reject Defendant's argument that his pretrial motion

plain error standard, Defendant must show: "(1) error, (2) that is plain, (3) which affects the party's substantial rights, and (4) which seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Venjohn*, 104 F.4th 179, 183 (10th Cir. 2024) (citation omitted). An error is plain when it is "clear or obvious" that it is contrary to current Supreme Court or Tenth Circuit law. *United States v. Koch*, 978 F.3d 719, 726 (10th Cir. 2020).

Defendant requested two jury instructions relating to Buckley's prior violent behavior, one on Buckley's general character or reputation for violence, and another on Buckley's specific prior violent acts. The district court delivered a modified version of the former and excluded the latter. Defendant's requested instruction number five states Buckley's character or reputation for violence is relevant to deciding whether he was the aggressor in the confrontation with Defendant:

> You have heard testimony that Timothy Buckley had a reputation for violent behavior. The defendant has presented evidence that he acted in self-defense or defense of others when he shot Timothy Buckley. In deciding whether or not defendant was the aggressor in the confrontation, you may consider evidence of Timothy Buckley's violent disposition. While the deliberate killing of another cannot be justified solely by that person's character for violence, the law recognizes that one with a reputation for violent behavior may be more likely to provoke or assume the character of the aggressor in an encounter.

R. Vol. I at 94. Next, Defendant's requested instruction number six states Buckley's specific prior violent acts may be relevant to his state of mind and the amount of force

---

in limine to include the *underlying evidence* of Buckley's prior violent acts is sufficient to preserve his appeal of the district court's *jury instruction* on that issue.

he used in self-defense, provided he knew of Buckley's prior acts at the time of the shooting:

> You have heard evidence of prior violent acts engaged in by Timothy Buckley that occurred at times other than the offense date of August 7, 2021. You may consider that evidence only as it bears on the defendant's state of mind at the time of the shooting and whether it was reasonable for him to believe that the amount of force used was necessary to prevent death or great bodily harm to himself or another. It is the government's burden to prove beyond a reasonable doubt that defendant did not act in self-defense or defense of another.
>
> It does not matter whether Timothy Buckley engaged in the violent acts or not. However, the defendant must have known of the violent acts at the time of the shooting and believed that the acts occurred for the evidence to be relevant to his state of mind.

*Id*. at 95. Ultimately, the district court gave one instruction, a modified version of Defendant's requested instruction five, which became final instruction twelve, entitled "Evidence Regarding Decedent's Character or Reputation for Violence":

> During the trial, you have heard testimony regarding Timothy Buckley's character or reputation for violence. Defendant asserts that he was acting in self-defense or defense of another when he shot Mr. Buckley. In deciding whether or not Defendant was the aggressor in the confrontation, you may consider evidence regarding Timothy Buckley's character or reputation for violence.

*Id*. at 153 (Jury Instruction No. 12). Defendant argues this instruction incorrectly states the law by implying (1) the jury could *only* consider evidence of Buckley's violent history to determine who the aggressor was and (2) Defendant had the affirmative obligation to prove Buckley committed the prior violent acts.

The district court's character or reputation instruction was not plainly erroneous. Defendant cites two Tenth Circuit cases, neither of which hold it is error for a district

9

court to deliver a similar instruction. Defendant first cites *United States v. Armajo*, a case in which the defendant stabbed his uncle, allegedly in self-defense, after his uncle initiated a fistfight. 38 F.4th 80, 82 (10th Cir. 2022). To show he reasonably feared his uncle, the defendant offered evidence that his uncle previously assaulted him, his disabled brother, and a girlfriend. *Id*. at 83. The district court authorized testimony about the uncle's prior assault of the defendant but excluded evidence of the other assaults as unfairly prejudicial under Federal Rule of Evidence 403. *Id*. We held a victim's specific prior violent acts, when known to a defendant, may be admitted to prove the defendant's state of mind in a self-defense case. *Id*. at 84. We also held the district court did not err by excluding some of the evidence under Rule 403. *Id*. at 86. As it relates to Defendant's argument, *Armajo* at most establishes that evidence of Buckley's prior assaults may be admissible under Federal Rule of Evidence 404(b) to support his self-defense claim. But *Armajo* did not address jury instructions. Consequently, it is not "well-settled law" directly addressing the propriety of a jury instruction on prior violent acts evidence. *Koch*, 978 F.3d at 726.

Next, Defendant cites to *United States v. Corrigan*, 548 F.2d 879 (10th Cir. 1977), which is equally unavailing. In *Corrigan*, the defendant asserted he acted in self-defense when he pepper-sprayed the IRS agent arresting him for misdemeanor tax violations. *Id*. at 881. The district court issued an ambiguous self-defense jury instruction that could be interpreted as requiring the defendant to affirmatively prove he acted in self-defense. *Id*. at 882—83. We concluded there was a reasonable possibility the instruction misled the jury into applying the wrong burden of proof. *Id*.

at 883—84.  As such, we reversed and remanded for a new trial.  Defendant argues *Corrigan* stands for the broad proposition that when doubt exists as to whether a jury correctly applied self-defense law, reversal is required.  We disagree.  The holding in *Corrigan* is much narrower: the particular charge given in Corrigan's trial failed to adequately instruct the jury on the burden of proof for a self-defense claim.  Moreover, prior acts evidence was not at issue in *Corrigan*, nor did the case address the propriety of a prior acts jury instruction.  As such, *Corrigan* does not establish the district court's instruction was erroneous.

In sum, Defendant has not provided—nor have we uncovered—any Tenth Circuit or Supreme Court decision that holds a district court errs when it fails to affirmatively instruct the jury that prior violent acts may be relevant to a defendant's state of mind in a self-defense claim.  Even assuming the jury instruction was erroneous, the error was not plain.[5]

---

[5] The absence of authority establishing plain error does not mean the district court's omission was proper.  We reiterate that instructions on the theory of defense "must adequately instruct the jury on the legal principles underlying the defense." *United States v. Migliaccio*, 34 F.3d 1517, 1523 (10th Cir. 1994).  "Each case has its own peculiar facts and formalized instructions must be tailored to the facts and issues." *Aves By and Through Aves v. Shah*, 997 F.2d 762 (10th Cir. 1993).  In this case, Defendant argued his use of force in self-defense was reasonable in part because he knew Buckley had been violent in the past under similar circumstances.  We have held a jury may consider such prior acts evidence for that exact purpose. *Armajo*, 38 F.4th at 82.  On remand, the district court should consider whether its instructions in their entirety adequately inform the jury of the relevant burdens of proof and apprise the jury of the law governing the relationship between Buckley's prior acts, his reputation, and Defendant's self-defense claim.

11

**B.**

Second, Defendant argues the district court erred by instructing the jury on his flight after the shooting. He contends the instruction unfairly highlighted his flight and constituted an impermissible comment by the trial judge on the weight of the evidence. Because Defendant objected in the district court, we review the district court's decision to issue the instruction for abuse of discretion. *United States v. Flechs*, 98 F.4th 1235, 1250 (10th Cir. 2024).

> The challenged instruction provides:
>
> Evidence that a defendant fled is a circumstance that, if proven beyond a reasonable doubt, can be considered by the jury as a showing of a consciousness of guilt on the part of the Defendant.
>
> In your evaluation of this evidence of flight, you may consider that there may be reasons – fully consistent with innocence – that could cause a person to flee. Fear of law enforcement, reluctance to become involved in an investigation, or simple mistake may cause a person who has committed no crime to immediately flee.
>
> As fact finder, you are the sole judges of whether a defendant's flight causes you to find a consciousness of guilt and the significance, if any, of that consciousness of guilt.

R. Vol. I at 154 (Jury Instruction No. 13). Defendant acknowledges we have yet to find error in a district court's decision to issue a flight instruction, but contends it is "better practice" not to give such an instruction.

"Traditionally flight has been viewed as an admission by conduct which expresses consciousness of guilt." *United States v. Martinez*, 681 F.2d 1248, 1256 (10th Cir. 1982). As such, "flight evidence carries with it a strong presumption of admissibility." *Id*. (citation omitted). Even so, the district court must "scrutinize the

12

facts of each case to determine whether the jury should be given an opportunity to draw [an] inference of guilt from the defendant's flight." *Id*. at 1257.  In the instant case, Defendant testified he fled the scene after killing Buckley and "laid low" for four months.  Defendant does not object to the admissibility of flight evidence or the legal accuracy of the jury instruction, but rather to the propriety of the district court's decision to single out the evidence through a jury instruction.  He relies on out-of-circuit precedent asserting the probative value of flight evidence is minimal considering the numerous possible innocent explanations for flight, and therefore flight instructions should be given with great caution.  *See, e.g., United States v. Rodriguez*, 53 F.3d 1439, 1451 (7th Cir. 1995).

The district court did not abuse its discretion by giving the flight instruction in this case.  We have historically rejected challenges to similar flight instructions.  In *Bailey v. United States*, we affirmed the use of an after-the-fact intentional flight instruction in a rape prosecution in which the defendant left his job and fled town upon learning his codefendant was arrested.  410 F.2d 1209 (10th Cir. 1969).  The instruction directed the jury that it may consider a defendant's intentional flight, if proven, as showing his consciousness of guilt.  *Id*. at 1217.  We explained the instruction's "substance has heretofore been approved by this court."  *Id*. (citing *Osborn v. United States*, 391 F.2d 115, 118 (10th Cir. 1968); *Kreuter v. United States*, 376 F.2d 654 (10th Cir. 1967)).  Here, Defendant admitted he fled after shooting Buckley because he did not think anyone would believe he acted in self-defense.  Like the instructions in our precedents, the district court's instruction informed the jury it may—but was not

13

required to—consider Defendant's flight as suggesting his consciousness of guilt. The instruction went a step further in mitigating the risk of prejudice by inviting the jury to consider specific innocent reasons for Defendant's flight. The instruction was thus well within the bounds of those we have permitted in the past. There was no abuse of discretion.

## C.

Third and finally, Defendant argues here as he did in the district court that the court's instructions in their entirety were inadequate because they failed to instruct the jury he had no legal duty to retreat or consider alternatives before using deadly force.[6] Defendant contends this omission left the jury without legal guidance as to how the Government's evidence that Defendant failed to retreat, fire a warning shot, call 911, or pursue other non-lethal alternatives relates to his self-defense claim. This, Defendant contends, prevented the jury from fully considering his defense. For this challenge, we review the full set of instructions de novo in light of the record to determine if they "fairly, adequately and correctly state the governing law and provide the jury with an ample understanding of the applicable principles of law and factual issues confronting them." *Lederman v.*

---

[6] This claim is subject to two overlapping standards of review and Defendant argues both. He asserts the district court abused its discretion by omitting his proposed language from its self-defense instruction *and* that the same omission rendered the entire set of jury instructions inadequate. *See United States v. Vasquez*, 985 F.2d 491, 496 (10th Cir. 1993) (district court's omission of particular language within an instruction is reviewed for abuse of discretion); *see also Lederman v. Frontier Fire Protection, Inc.*, 685 F.3d 1151, 1154 (2012) (adequacy of the court's jury instructions in their entirety is reviewed de novo). We need not address Defendant's argument that the district court abused its discretion in omitting his requested language because we conclude the entire charge was inadequate on de novo review.

*Frontier Fire Protection, Inc.*, 685 F.3d 1151, 1154 (2012) (citation omitted).  We reverse, as here, when we have a "substantial doubt that the jury was fairly guided." *Kahn*, 58 F.4th at 1315 (citation omitted).

"A person may resort to self-defense if he reasonably believes that he is in imminent danger of death or great bodily harm, thus necessitating an in-kind response." *United States v. Toledo*, 739 F.3d 562, 567 (10th Cir. 2014) (citing *United States v. Visinaiz*, 428 F.3d 1300, 1311 (10th Cir. 2005)).  "Self-defense only requires the defendant's reasonable belief that deadly force was necessary, not that he exercise a duty to retreat or recognize the unavailability of reasonable alternatives." *Id*. at 568 (citing *Visinaiz*, 428 F.3d at 1311).  A jury, however, may consider a defendant's ability or opportunity to retreat as a factor in assessing whether his use of deadly force was reasonably necessary to defend himself or another under the circumstances. *Id*. at 567.

To impugn his self-defense claim, the Government introduced and emphasized evidence that Defendant refused to retreat or pursue alternatives.  From the outset of its opening statement, the Government set forth a clear theme: Defendant committed intentional murder because Buckley "had disrespected him in the street" and his self-defense claim was incompatible with that reality.  Government counsel said the evidence would show "[n]othing prevented the defendant from turning around and walking away" among "any number of different things the defendant could have done that night."  Later, during Defendant's cross-examination, the Government asked dozens of questions to

15

establish he considered and rejected those non-deadly options. The Government first questioned Defendant's decision to engage with Buckley:

> *Q.* (BY THE GOVERNMENT) You gave us a lot of testimony about how dangerous and how afraid you were of Timothy. Do you remember that testimony?
> *A.* (BY DEFENDANT) Yes.
> *Q.* You could have chosen not to engage with this guy; right? You could have just gone to the party and not stopped?
> *A.* It would have only made it worse.
> *Q.* You don't know that.
> *A.* Yes, I do.
> *Q.* Well, can't get much worse than having to kill somebody, can it?
> *A.* I probably would have ended up dead myself.
> *Q.* You had a pistol?
> *A.* Yes, for protection.
> *Q.* Timothy didn't have a pistol that you know of?
> *A.* I didn't know that.
> *Q.* As it turns out, no pistol, no knife; right?
> *A.* I didn't know that at the time.
> *Q.* And that's all the more reason for you to not stop and keep going up to the party where your friends were, where you were safer.

*Id.* at 515—16. Then the Government suggested Defendant could have gone to the party down the street for backup or gotten into a fistfight with Buckley:

> *Q.* How far up the street from Elizabeth's house was the party? How many houses up?
> *A.* The party was never going to be there, it was just somewhere that I was at.
> *Q.* There were people at the house up the street; right?
> *A.* Yeah.
> . . .
> *Q.* Who was at that house?
> *A.* It was just my cousin and the person that owned it.
> *Q.* And Jaylon Heneha; right?
> *A.* Yes, that's my cousin.
> *Q.* Right. Okay. So there were other people up there that could have helped you; right?
> *A.* Possibly, yes.

16

*Q*. Okay. If you wanted to, you could have just had a fistfight with your cousin; right?

*A*. I didn't know what all he was going to do to me. I didn't know if he had a knife on him or not.

*Q*. Right. You didn't know that. You didn't see one; right?

*A*. No.

*Q*. So you could have fought him; right?

*A*. I mean, yeah, but I didn't know if it was going to stop, didn't know how bad it was going to get.

*Q*. Right. And if it escalated to the deadly physical force situation, then you could have taken out your gun and killed him; right?

*A*. He could have took it from me.

*Id*. at 516—17. Next, the Government questioned why Defendant did not fire a warning shot or call the police:

*Q*. You could have -- you had the gun on your right hip?

*A*. Yes, sir.

*Q*. Could have flashed the gun and scared him; right?

*A*. I don't think it would have scared him.

*Q*. Could have pulled the gun out and fired a warning shot into the ground, surely that would have scared him?

*A*. Probably.

*Q*. But you didn't choose to do that; right?

*A*. No, sir.

*Q*. And if you wanted to, you simply could have called the police; right?

*A*. I could have.

*Q*. You had a cell phone with you?

*A*. Yeah.

*Q*. You're familiar with 911; right?

*A*. Yeah.

*Q*. But you didn't choose to call the police that night, did you?

*A*. No, I didn't.

*Id*. at 518—19. Finally, the Government suggested Defendant could have retreated or run away:

*Q*. Okay. You were standing further south, which is the direction you had come from. You had walked from the south going up that way; right?

*A*. Yes.

17

*Q.* There was no one standing behind you, was there?
*A.* Not that I know of.
*Q.* With no effort at all you could have walked right back in the direction you came, couldn't you?
*A.* I was never going to turn my back on him.
*Q.* Could have backed up; right?
*A.* Yeah, I did.
*Q.* Could have turned around and ran; right?
*A.* I was never going to turn my back on him. I'm not that fast.  You know, he could have caught me.
*Q.* He's faster than you?
*A.* Possibly.  I'm pretty slow.
*Q.* He's 290 pounds; right?
*A.* And I'm not that far behind him.
*Q.* What do you weigh?
*A.* About 250.
*Q.* Okay.  You could have tried to run?
*A.* I wasn't going to take that chance.

*Id*. at 516—520.  Then in closing, the Government argued Defendant's failure to retreat or

pursue available alternatives showed he intentionally murdered Buckley:

> And, yes, counsel is right, I am going to argue the number of different things that the defendant could have done that night. The defendant could have gotten in a fistfight with him. The defendant could have flashed the gun and scared him off. He could have discharged that round in the ground. And I am cognizant of people's right to defend themselves when threatened by deadly physical force, do not get me wrong. Absolutely. But that is not what the facts here show.
>
> He could have called the police. He had a cell phone with him. And he could have just walked away, but that's not what he chose to do. No one was behind him. He told you, no one was behind him, nothing was stopping him from walking away. But instead, he chose to take Timothy's life. He chose to intentionally shoot an unarmed man four times at least.

*Id*. at 591—92.  In sum, Defendant's failure to retreat or pursue alternatives was a

substantial component of the Government's argument against self-defense.

18

Yet, the district court steadfastly refused to instruct the jury on the governing law. Defendant requested what his counsel described as "the most important instruction to the defendant in this case," a brief quote from *Toledo*: "Self-defense only requires the defendant's reasonable belief that deadly force was necessary, not that he exercise a duty to retreat or recognize the unavailability of reasonable alternatives."  739 F.3d at 567.  The district court denied Defendant's request and issued an unmodified pattern self-defense instruction that did not address retreat or alternatives whatsoever.[7]  The court reasoned it was relieved of its duty to instruct the jury on this issue because the Government argued Defendant *could have* retreated without going so far as to argue he *must have* retreated.  Put differently, the district court believed it proper to deprive the jury of the governing law so long as the Government did not directly contradict it. Not so.

We hold the district court inadequately instructed the jury on Defendant's self-defense claim.  A district court "must *adequately* instruct the jury on the legal principles

---

[7] The instruction provides: "The defendant has offered evidence that he was acting in self-defense or in defense-of-another.  A person is entitled to defend himself and/or another person against the immediate use of unlawful force, but the right to use force in such a defense is limited to using only as much force as reasonably appears to be necessary under the circumstances.  A person may use force which is intended or likely to cause death or great bodily harm only if he reasonably believes that force is necessary to prevent death or great bodily harm to himself and/or another.  To find the defendant guilty of the crimes charged in the indictment, you must be convinced that the government has proved beyond a reasonable doubt either the defendant did not act in self-defense and/or in defense-of-another, or it was not reasonable for the defendant to think that the force he used was necessary to defend himself and/or another person against an immediate threat."  R. Vol. I at 160 (Jury Instruction No. 19); *see also* Tenth Cir. Crim. Pattern Jury Instruction No. 1.28 (2021).

underlying [a defendant's theory of] the defense." *United States v. Migliaccio*, 34 F.3d 1517, 1523 (10th Cir. 1994) (emphasis added). This means instructions must be tailored to reach the "peculiar" facts and legal issues raised in each case. *United States v. Lofton*, 776 F.2d 918, 922 (10th Cir. 1985). The Government raised the distinct factual issue regarding Defendant's recognition and disregard of available alternatives—including retreat—to prove he committed second-degree murder. As such, Defendant was entitled to an instruction on the law governing his defense that he had no legal duty to retreat or pursue alternatives before acting in self-defense. *See Migliaccio*, 34 F.3d at 1525 (reversing where a "jury was inadequately instructed on the legal foundation of Defendant's theory"). Of course, the Government was free to argue Defendant's failure to pursue alternatives rendered his use of force in self-defense unreasonable. The district court allowed the evidence for that purpose. But the court left the jury in the dark as to the applicable law. Not one of the court's instructions informed the jury that Defendant's failure to retreat was one factor the jury may consider in assessing whether Defendant's belief that it was necessary to use deadly force was reasonable. Nor was the jury told Defendant had no legal obligation to retreat or consider alternatives so long as he reasonably believed deadly force was necessary.[8] Self-defense was the dispositive issue at

---

[8] The Government argues an instruction by the district court would have been "superfluous" because Defense counsel told the jury in closing that Defendant had no duty to retreat. We disagree. "Arguments and evidence cannot substitute for instructions by the court." *Lofton*, 776 F.2d at 921 (citing *Taylor v. Kentucky*, 436 U.S. 488—89 (1978)); *see also Carter v. Kentucky*, 450 U.S. 288, 304 (1981) ("[D]efense counsel's own argument that the petitioner 'doesn't have to take the stand ... [and] doesn't have to do anything' cannot have had the purging effect that an instruction from the judge would have had."). Judge Brorby observed that *Carter* and *Taylor* both

trial.  Defendant's failure to retreat or pursue alternatives was central to the Government's case against self-defense.  The jury was left to guess as to how it should interpret that critical evidence.  On this record, we cannot be sure the jury would have reached the same verdict if adequately instructed on the law.  We therefore reverse and remand Defendant's convictions for a new trial.[9]

\*\*\*

We REVERSE Defendant Hicks' convictions in Counts One, Two, and Three, and REMAND to the district court with instructions to set aside the convictions and grant a new trial.

---

involved instructions on "obligatory non-inferences," so arguments from counsel were particularly insufficient substitutes. *Townsend v. Lumbermens Mut. Cas. Co.*, 294 F.3d 1232, 1245—46 (10th Cir. 2002) (Brorby, J., dissenting).  Here too, the omitted instruction obligated the jury not to infer a defendant has a duty to retreat before using deadly force in self-defense.  Defense counsel's argument was likewise no substitute for the court's instruction.

[9] The instructional error prejudiced Defendant's defense to second-degree murder in Count One.  Count Two relied upon Defendant's second-degree murder as a predicate offense.  Finally, Count Three relied upon Defendant's conviction in Count Two.  As such, the error impacted all three convictions.